[Civ. No. 5968. Fifth Dist. Sept. 30, 1981.]

JOHN EARL BURKHART, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

**COUNSEL**

George Deukmejian, Attorney General, Richard D. Martland, Assistant Attorney General, and Jeffrey J. Fuller, Deputy Attorney General, for Defendant and Appellant.

Jerry Sanders for Plaintiff and Respondent.

**OPINION**

**ANDREEN, J.**—The Department of Motor Vehicles (DMV or Department) appeals from a judgment granting a peremptory writ of mandate which ordered it to reissue the suspended driver's license of respondent John Earl Burkhart (Burkhart).

FACTS

Burkhart was arrested for driving under the influence of alcohol (Veh. Code, § 23102, subd. (a)[1]) on June 8, 1979.

On the same date, the arresting officer executed a statement under penalty of perjury as required by section 13353. In pertinent part, the statement reads: "At the time of arrest, I had reasonable cause to believe the person arrested had been driving a motor vehicle upon a highway while under the influence of intoxicating liquor. Among those actions which led me to that belief were:

---

[1]All statutory references are to the Vehicle Code unless otherwise noted.

"Driving Observations: Exceeding the speed limit i.e. 22348 CVC and unsafe turn i.e. 22107 VC

"...                .        .        .        .        .        .        .        .        .        .        .        .        .

"Objective symptoms of alcoholic intoxication: Odor of an alcoholic beverage and unable to satisfactorily pass the field sobriety tests

"I read the following statement to the arrested person: John Earl Burkhart

"You are required by state law to submit to a chemical test to determine the alcoholic content of your blood. You have a choice of whether the test is to be of your blood, breath or urine. If you refuse to submit to a test or fail to complete a test your driving privilege will be suspended for a period of six months. You do not have the right to talk to an attorney or to have an attorney present before stating whether you will submit to a test, before deciding which test to take, or during the administration of the test chosen. If you are incapable, or state you are incapable, of completing the test you choose, you must submit to and complete any of the remaining tests or test.

"The person arrested refused to submit to or failed to complete any such test. His refusal or failure was indicated by the following statements or actions:

"Will you take a blood test? Ans. 'No'

"Will you take a breath test? Ans. 'No'

"Will you take a urine test? Ans. 'No'

"'I don't need a license to drive!'"

On July 13, 1979, an accusation was filed with DMV seeking the suspension of Burkhart's driver's license for noncompliance with the implied consent law. (§ 13353.) The driver filed a timely notice of defense and requested a hearing pursuant to section 14107.

After having been rescheduled twice because of the failure of the arresting officer to appear, an informal[2] hearing was held—again without

---

[2]Section 14104.

the presence of the officer because this time he was on vacation. The minutes of the referee at the informal hearing indicate that the officer was subpenaed; however, at oral argument the Attorney General advised us that subpenas are issued but not served; they are merely mailed to the law enforcement agency to advise of the hearing date.

Over objection by Burkhart's counsel, the referee introduced the officer's sworn statement[3] into evidence. Burkhart and his wife contested several portions of the officer's statement: they claimed he was not under the influence,[4] that he did not make an unsafe turn,[5] that he was only given one test for sobriety[6]—the heel to toe test—with which he did have "trouble," that the officer started to read the section 13353 requirements, but that Burkhart stopped him stating that he knew the requirements and that he was not going to take any tests, that the officer did not ask if he would take a blood, breath or urine test, just said that if he did not take a test he would lose his license for six months.

The referee found against Burkhart on these issues, finding that the officer had reasonable cause to arrest for violation of section 23102 and, insofar as the officer was able to do so (Burkhart intervened), "that he properly administered the requirements of section 13353VC and that he did in fact receive a refusal."

After the hearing, Burkhart's driving privileges were suspended for six months. He then petitioned the superior court for a writ of mandate. No additional evidence was introduced at the mandamus proceeding. The superior court made the findings of fact and conclusions of law set forth in the margin.[7]

---

[3] Section 13353, subdivision (b).

[4] This is relevant evidence as to whether the officer had reasonable cause to believe Burkhart was driving under the influence, but does not directly controvert the officer's statement.

[5] The record does not show which code section was deemed violated for purposes of arrest.

[6] We have been cited to no authority which states how many roadside sobriety tests are required.

[7] "FACTS

"1. The Petitioner, John Earl Burkhart, was arrested for violation of section 23102(a) California Vehicle Code on June 8, 1979.

"2. A hearing re: suspension of Petitioner's drivers license was held by the Department of Motor Vehicles on September 17, [1979].

"3. The arresting officer did not appear on three prior occasions for hearing.

"4. The arresting officer did not appear for the hearing on September 17, [1979] and

## Can an Officer's Hearsay Sworn Statement Support a Finding Against Conflicting Evidence When the Officer is Not Available for Cross-Examination?

■ The statutory scheme for hearings before the DMV is set forth in section 14100 et seq.[8] Informal hearings "shall be conducted in a completely informal manner" (§ 14104), and the Department may consider its official records. (*Ibid.*, § 14108.) Its records include the sworn report of the officer, since subdivision (b) of section 13353 provides for the filing of such a report. (And see *Fankhauser* v. *Orr* (1968) 268 Cal.App.2d 418, 423 [74 Cal.Rptr. 61].) Subpenas are issued on request. (§ 14104.5.) The hearing is civil in nature. (*McDonnell* v. *Department of Motor Vehicles* (1975) 45 Cal.App.3d 653, 662 [119 Cal.Rptr. 804].)

However, the trial court in the instant case concluded: "The Officer's statement is not sufficient prima facie evidence of any matter as to which there is conflicting evidence. Where conflicting evidence is introduced, the Officer's statement is not properly considered by determining factual issues at the suspension hearing."

---

said hearing was conducted in his absence.

"5. The officer's statement, 13353, was admitted into evidence over Petitioner's objections.

"6. Conflicting evidence was introduced to refute the officer's written statement.

"7. Petitioner knew and understood the basic requirements of Vehicle Code section 13353 and refused to take any test.

"8. Petitioner made no attempt to secure the arresting officer's attendance at the hearing held on September 17, 1979.

"CONCLUSIONS OF LAW

"1. The absence of the arresting officer at the hearing deprived Petitioner of his due process rights.

"2. The Officer's statement is not sufficient prima facie evidence of any matter as to which there is conflicting evidence. Where conflicting evidence is introduced, the Officer's statement is not properly considered by determining factual issues at the suspension hearing.

"3. Petitioner's request should be granted and the Department of Motor Vehicles of the State of California should be stayed from any action, arising out of this case, regarding petitioner's drivers license and said license should be re-issued and re-instated without penalty or forfeiture."

[8]The provisions of the Administrative Procedure Act, Government Code section 11500 et seq., do not apply to informal hearings. (*Hough* v. *McCarthy* (1960) 54 Cal.2d 273, 286-287 [5 Cal.Rptr. 668, 353 P.2d 276]; *Noll* v. *Department of Motor Vehicles* (1969) 274 Cal.App.2d 281, 283 [79 Cal.Rptr. 236].)

■

There is language in *August* v. *Department of Motor Vehicles* (1968) 264 Cal.App.2d 52 [70 Cal.Rptr. 172] to support the assertion that an officer's sworn statement made pursuant to section 13353 may support a finding by the referee only if not contradicted by other evidence.[9] The actual holding in *August* was that there was no dispute as to the existence of the facts upon which DMV was authorized to suspend a license under section 13353, and that therefore the trial court's judgment granting a writ of mandamus against the Department was reversed. The court noted that the unrepresented licensee at the departmental hearing did not object to the admission of the officer's sworn statement, and that such a statement should have the dignity of prima facie evidence if received without objection and without a request to cross-examine the officer. (*Id.*, at pp. 62-63.)

The *August* court had occasion to consider the implied consent law again in *Fallis* v. *Dept. of Motor Vehicles* (1968) 264 Cal.App.2d 373 [70 Cal.Rptr. 595], another appeal from a judgment commanding the DMV to set aside the suspension of a driver's license. The court stated: "The sworn statement of the arresting officer provided for by section 13353, Vehicle Code, is a sufficient basis for the summary suspension of a license if the licensee does not ask for a hearing; and in an informal hearing the statement should be and is sufficient *prima facie* evidence of any matter as to which there is no conflicting evidence. We are of opinion, however, that the statement in form of a conclusion that the arresting officer had reasonable cause is not alone sufficient to overcome evidence to the contrary." (*Id.*, at p. 379.)[10]

The third case on point is *Fankhauser* v. *Orr, supra,* 268 Cal.App.2d 418, where the court reversed a peremptory writ of mandate to the DMV. At an informal administrative hearing, the sworn statement was introduced over objection. The driver testified but did not controvert the statement and in fact supported the statement as to probable cause. The trial court concluded that the driver was too intoxicated to refuse to

---

[9]Not all prima facie evidence is disregarded in the face of conflicting evidence. (See Evid. Code, §§ 600-606.)

[10]Neither citation of authority nor a line of reasoning was given in support of this statement.

submit to a chemical test. The reviewing court rejected this contention. (*Id.*, at p. 421.) The driver also complained that the suspension was based solely on the sworn statement, to which he had objected on hearsay grounds. The court held that the hearsay was admitted pursuant to statutory authorization and rejected the driver's contention: "Here, the arresting officer's sworn statement, having been duly filed with the Department under Vehicle Code, section 13353, is an official record of the Department within the meaning of Vehicle Code, section 14108. As such, it was entitled to consideration at either an informal or formal hearing before the Department.

"It is settled that the provisions of the Government Code dealing with administrative hearings are not applicable to informal hearings under Vehicle Code, section 14104 . . . .

"We are satisfied that even though the officer's sworn statement did constitute hearsay, it was hearsay specifically made admissible by statute. (See Witkin, Cal. Evidence (2d ed. 1966) p. 588.) Hence, the referee was correct in overruling plaintiff's objection thereto. Plaintiff was obviously entitled to produce evidence controverting the statement at the hearing and, had he chosen to do so, could have called the arresting officer himself. Instead, he relied solely upon his own testimony which furnished additional support for the referee's finding that the officer had probable cause to stop him and in no way controverted the other averments of the officer's sworn statement . . . ." (*Id.*, at p. 423.)

The *August* court cited *Greene* v. *McElroy* (1959) 360 U.S. 474 [3 L.Ed.2d 1377, 79 S.Ct. 1400], as did the trial court[11] in the instant case. It is appropriate therefore to examine *Greene* and other federal cases.

*Greene* v. *McElroy* is a very limited holding. In it, the court was confronted with a clearance procedure for employees engaged in defense work requiring access to classified information. The hearing board considered reports of investigations conducted by the Federal Bureau of Investigation and other investigative agencies. It did not see the informants or even know their identities. Based upon this information, petitioner was denied his security clearance, which effectively made it impossible to follow his field of endeavor as an aeronautical engineer. The court noted that neither the President or Congress had empowered

---

[11]The trial court also relied upon *August* and *Fallis*. Since these cases have never been critically analyzed, no criticism can be made of the trial court's ruling.

the use of hearsay in such a hearing, and commented: "We decide only that in the absence of explicit authorization from either the President or Congress the respondents were not empowered to deprive petitioner of his job in a proceeding in which he was not afforded the safeguards of confrontation and cross-examination." (*Id.*, at p. 508 [3 L.Ed.2d at p. 1397].)

The Supreme Court of the United States has spoken on procedural due process requirements in license revocation cases.

In *Bell* v. *Burson* (1971) 402 U.S. 535 [29 L.Ed.2d 90, 91 S.Ct. 1586] the court held that except in emergency situations, due process requires that when a state seeks to terminate a driver's license, it must afford notice and opportunity for a hearing appropriate to the nature of the case. Under the Georgia financial responsibility statute providing for the suspension of the license of an uninsured motorist involved in an accident who failed to post security to cover the amount of damages claimed by aggrieved parties, the state had to provide a forum for the determination of the question of whether there was a reasonable possibility of a judgment being rendered against the uninsured motorist. The court declined to rule what procedural safeguards were necessary in such a suspension hearing. "A procedural rule that may satisfy due process in one context may not necessarily satisfy procedural due process in every case. Thus, procedures adequate to determine a welfare claim may not suffice to try a felony charge...." (*Id.*, at p. 540 [29 L.Ed.2d at p. 94].)

In two other cases, *Dixon* v. *Love* (1977) 431 U.S. 105 [52 L.Ed.2d 172, 97 S.Ct. 1723] and *Mackey* v. *Montrym* (1979) 443 U.S. 1 [61 L.Ed.2d 321, 99 S.Ct. 2612], the high court has held that the due process clause of the Fourteenth Amendment applies to a state's suspension or revocation of a driver's license.

■ The resolution of the question of *what process is due* is a more difficult question. In a case involving social security entitlement, *Mathews* v. *Eldridge* (1976) 424 U.S. 319, the court stated at pages 334-335 [47 L.Ed.2d 18, 33, 96 S.Ct. 893]: "[¶] ... "'[d]ue process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' *Cafeteria Workers* v. *McElroy*, 367 U.S. 886, 895 .... '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' *Morrissey* v.

*Brewer*, 408 U.S. 471, 481 .... Accordingly, resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected. *Arnett* v. *Kennedy, supra*, 416 U.S., at 167-168 ... (Powell, J., concurring in part); *Goldberg* v. *Kelly, supra*, 397 U.S., at 263-266 ... ; *Cafeteria Workers* v. *McElroy, supra*, 367 U.S., at 895 .... More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [Citation.]"

■ We turn to a consideration of the *Mathews* factors in order to determine whether due process precludes the use of hearsay in the form of the officer's sworn statement in these license suspension hearings and whether such a statement, if believed by the trier of fact, may constitute sufficient cause even though the licensee introduces credible evidence to the contrary.

The first step in the balancing process mandated by *Mathews* is identification of the nature and weight of the private interest affected by the official action challenged. The private interest affected is the license to operate a motor vehicle for a period of six months. This interest is a substantial one. (*Dixon* v. *Love, supra*, 431 U.S. 105, 112 [52 L.Ed.2d 172, 179-180, 97 S.Ct. 1723]; *Bell* v. *Burson, supra*, 402 U.S. 535, 539 [29 L.Ed.2d 90, 94-95]; *Mackey* v. *Montrym, supra*, 443 U.S. 1, 10-11 [61 L.Ed.2d 321, 329-330, 99 S.Ct. 2612, 2617].) A license erroneously suspended would cause personal inconvenience and possible economic hardship. But however substantial such a property interest may be, it is no more substantial than the right to pretrial freedom in criminal cases because of the presumption of innocence.

*Gerstein* v. *Pugh* (1975) 420 U.S. 103 [43 L.Ed.2d 54, 95 S.Ct. 854] examined Florida's criminal procedures which resulted in pretrial restraint of liberty simply upon the filing of a prosecutor's information without preliminary hearing and without leave of court. The high court held the procedure unconstitutional and held that a person arrested and

held for trial on an information is entitled to a judicial determination of probable cause for detention. However, it also held that a full adversary hearing was not required. The determination of probable cause need not be accompanied by the full panoply of adversary safeguards—counsel, confrontation, cross-examination, and compulsory process for witnesses. Since the sole issue is probable cause for detention, the issue may be determined without an adversary hearing.

On the other hand, a welfare recipient's need for money with which to exist requires a pretermination hearing with rights of cross-examination and confrontation. (*Goldberg* v. *Kelly* (1970) 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011].)

In reference to the risk of erroneous decisions, the second stage of the *Mathews* inquiry, and the concomitant assessment of the probable value of more stringent procedures, the due process clause does not require that all decisionmaking preclude any possibility of error. (*Mackey* v. *Montrym, supra*, 443 U.S. at p. 13 [61 L.Ed.2d at p. 331, 99 S.Ct. at p. 2618].) The issues before the referee are whether the driver was lawfully arrested for an offense allegedly committed while he was driving, whether the officer had reasonable cause to believe that he had been driving a motor vehicle upon a highway while under the influence of intoxicating liquor, whether the driver was given a choice of three tests—blood, breath or urine, whether there was the advisement that failure to submit to such a chemical test will result in the suspension of his privilege to operate a motor vehicle for six months and whether there was a refusal to so submit. As pointed out in *Mackey* (443 U.S. at p. 15 [61 L.Ed.2d at p. 333, 99 S.Ct. at p. 2619]), these issues do not carry with them a substantial risk of error. The questions of whether or not the proper advisement was made and the licensee's refusal to submit to a chemical test are straightforward. In reference to the determination of whether the officer had reasonable cause to believe that the driver had been operating a motor vehicle on a highway while under the influence of intoxicating liquor, the decision process is relatively easy. As the court noted in *Gerstein* v. *Pugh, supra*, 420 U.S. 103 at page 121 [43 L.Ed.2d 54 at page 69]: "The use of an informal procedure is justified not only by the lesser consequences of a probable cause determination but also by the nature of the determination itself. It does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt. . . . "

As any magistrate can attest, the legal issues on a preliminary hearing can be complex, but the factual issues as to whether a crime has been committed and whether there is sufficient cause to believe the defendant guilty thereof[12] are usually quite manageable, while issues requiring determinations using the preponderance of evidence test are more difficult.

The physical presence of the officer at the hearing would not substantially enhance the reliability of the hearing process. The officer and the licensee would engage in a swearing match and cross-examination of the officer would seldom reveal any weaknesses in his testimony, simply because the issues are neither complex nor subtle.

Finally, in reference to the governmental interest and the fiscal and administrative burdens involved if additional or substitute procedures are mandated, we note that governmental agencies at the state and local level are in a period of fiscal restraint. Police manpower resources are finite. It does not comport with the public interest to require the presence of the arresting officer at every hearing. The licensee has an absolute right to compel his attendance if he requests a subpena, has it served and pays the statutory fee. (§ 14104.5; Gov. Code, § 68097.2.) In the event the licensee deems the officer's presence critical to his defense, the burden is properly placed on him to insure the officer's attendance. Many licensees may prefer that the officer not appear, so as to take his chances on his powers of persuasion working in the absence of conflicting live testimony.

We conclude that the federal due process clause does not invalidate the statutory hearing scheme provided for in section 14100 et seq.

We turn to an examination of California cases other than the three driver's license cases discussed (*August, Fallis* and *Fankhauser*) and other than those interpreting or discussing hearings under the Administrative Procedure Act.

In the seminal case of *Walker* v. *City of San Gabriel* (1942) 20 Cal.2d 879 [129 P.2d 349, 142 A.L.R. 1383], the trial court granted a judgment of nonsuit in a mandamus proceeding in which petitioner sought to test a city's revocation of his business license. At the hearing before the city council, the city read a letter from the police chief set-

---

[12](Pen. Code, § 872.)

ting forth numerous charges which were claimed to be violations of law. The petitioner declined to present testimony, contending that there was no evidence before the city council. The trial court judgment of nonsuit against the petitioner in the mandamus action was reversed, the court holding that it was an abuse of discretion to revoke a license without competent evidence, and that hearsay evidence is insufficient to support revocation. (*Id.*, at p. 881.) In a concurring opinion by Justice Traynor, joined by two other justices, it was stressed that the holding was that no hearing on the charges was had, and that in the absence of statutes to the contrary, there was no substantial evidence to support an administrative decision if the only evidence is hearsay.

The limitation sought by Justice Traynor was embraced by the court in *Steen* v. *Board of Civil Service Commrs.* (1945) 26 Cal.2d 716 [160 P.2d 816]. The California Supreme Court reversed an order denying a petition for writ of mandate where the petition showed the making of findings supported solely by hearsay evidence introduced over objection and the arbitrary refusal to allow the discharged employee's counsel to participate in the proceedings. On the hearsay point, the court stated: "The general rule is that in the absence of a special statute an administrative agency cannot over objection make findings of fact supported solely by hearsay evidence. (See *Consolidated Edison Co.* v. *National Labor Relations Bd.*, 305 U.S. 197 ... ; *Walker* v. *City of San Gabriel*, 20 Cal.2d 879 ... ; *Dyment* v. *Board of Medical Examiners*, 93 Cal.App. 65. ...)" (*Id.*, at pp. 726-727.)

We conclude that case law in this state establishes that the statutory hearing scheme under review comports with due process without the limitations imposed on it by *August* v. *Department of Motor Vehicles, supra*, 264 Cal.App.2d 52 and *Fallis* v. *Dept. of Motor Vehicles, supra*, 264 Cal.App.2d 373.

A review of cases in other jurisdictions is not helpful.

An Annotation, License Revocation—Sufficiency of Hearing (1974) 60 A.L.R.3d 427, addresses the issue. It cites New York cases, some of them from appellate courts, which hold that due process requires exclusion of hearsay testimony at license revocation or suspension hearings. To the same effect, is a trial court determination from Delaware. (*In re Sweeney* (Del. Super. 1969) 257 A.2d 764.) It appears that Connecticut law permits hearsay reports of a traffic officer at such proceedings.

(*Lawrence* v. *Kozlowski* (1976) 171 Conn. 705 [372 A.2d 110]—implied holding.)

And in *Thomas* v. *District of Col. Bd. of Appeals and Rev.* (D.C. App. 1976) 355 A.2d 789, it was held that a hearing to determine whether a driver's license should be suspended for failure to comply with the provisions of the Motor Vehicle Safety Responsibility Act, which included a determination of whether there is a reasonable possibility of liability by the uninsured, requires less than a full adjudicatory hearing. Since the resolution is simply one of determining whether there is a reasonable possibility of liability, a hearing providing only for the right to appear through counsel and the right to cross-examine any witness appearing in person was sufficient. It was held that there was no need to give the right to confrontation and cross-examination of nonappearing witnesses who gave written statements.

As discussed above, our Legislature has provided for the admission of hearsay by statute in the type of hearings under consideration. The provision is not unique. For instance, reports of attending· or examining physicians and other forms of hearsay are routinely received in workers' compensation proceedings. (Lab. Code, § 5703.) This is subject, of course, to the right of cross-examination. (*Langendorf etc. Bakeries* v. *Ind. Acc. Com.* (1948) 87 Cal.App.2d 103, 105 [195 P.2d 887].) Such hearsay evidence is sufficient in itself to sustain an award. (*State Comp. Ins. Fund* v. *Indus. Acc. Com.* (1924) 195 Cal. 174, 177-178 [231 P. 996].)

We hold the statutory scheme in section 14100 et seq. constitutional as not violative of the due process clause of the state and federal Constitutions.

We decline to follow the holdings in *August* v. *Department of Motor Vehicles, supra*, 264 Cal.App.2d 52 and *Fallis* v. *Dept. of Motor Vehicles, supra*, 264 Cal.App.2d 373. We believe that the holding in *Fankhauser* v. *Orr, supra*, 268 Cal.App.2d 418 is correct.

It follows that the hearing afforded petitioner by the referee should not have been struck down for reliance on hearsay in the form of the statutory report of the officer. (§ 13353.) This is true even though there was evidence by Burkhart and his wife which was, at least arguably, in conflict with the contents of the report.

■ There is a special problem in this case because the matter was continued twice so that the officer could attend, and thus Burkhart had no warning that it would be necessary to serve the officer with a subpena if he desired his attendance.

The mandamus hearing in the court below was a limited trial de novo.[13] By virtue of the fact that Burkhart had been led to believe that the officer would be present at the administrative hearing, he could not be faulted for failure to serve his own subpena.

Nor is it reasonable to require Burkhart to have anticipated our holding that it is his burden to produce the officer's testimony if desired. Therefore, we hold that upon remand, the officer's testimony, if offered by Burkhart, should be admitted as evidence which could not have been produced at the administrative hearing in the exercise of reasonable diligence. (Code Civ. Proc., § 1094.5, subd. (e).)

Upon remand, and providing that Burkhart files a timely request with the trial court for the opportunity to present the officer's testimony, the trial court shall hear and consider such evidence, or, in its discretion, remand the cause to the Department for such purpose. (Code Civ. Proc., § 1094.5, subd. (e).)

The judgment is reversed and remanded for further proceedings in accordance with this opinion.

Zenovich, Acting P. J., and McIntosh, J.,* concurred.

[13]We acknowledge the force of *McGue* v. *Sillas* (1978) 82 Cal.App.3d 799 [147 Cal.Rptr. 354] and the discussion in *Buchanan* v. *Department of Motor Vehicles* (1979) 100 Cal.App.3d 293 [160 Cal.Rptr. 557]. However, this district has held otherwise. (See *Thompson* v. *Department of Motor Vehicles* (1980) 107 Cal.App.3d 354, 357 [165 Cal.Rptr. 626]; accord *McConville* v. *Alexis* (1979) 97 Cal.App.3d 593, 600-601 [159 Cal.Rptr. 49].) We were advised during oral argument that the Attorney General conceded during the mandamus hearing that the court should use the independent judgment test.

*Assigned by the Chairperson of the Judicial Council.