[Civ. No. 57784. Second Dist., Div. Three. Dec. 23, 1981.]

DONALD EDWARD FISK, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

COUNSEL

George Deukmejian, Attorney General, Scott D. Rasmussen and Richard M. Radosh, Deputy Attorneys General, for Defendant and Appellant.

Tumbleson & Lawton and Stephen E. Lawton for Plaintiff and Respondent.

OPINION

**POTTER, Acting P. J.**—The Department of Motor Vehicles (hereinafter DMV) appeals from a judgment mandating the DMV to set aside its decision suspending Donald Edward Fisk's license pursuant to the implied consent statute (Veh. Code, § 13353).[1]

[1]That section provided in pertinent part: "(a) Any person who drives a motor vehicle upon a highway shall be deemed to have given his consent to a chemical test of his blood, breath, or urine for the purpose of determining the alcoholic content of his blood

Fisk was arrested by Officer Gary Blackmon of the California Highway Patrol on April 28, 1978, for driving under the influence of alcohol (Veh. Code, § 23102, subd. (a)). The arresting officer, in accordance with the implied consent statute, submitted to the DMV a written "sworn statement." The document, entitled "Officer's Statement, Section 13353 Vehicle Code," recited the arresting officer's "observations" that Fisk's "vehicle was straddling and weaving at approx. 15 mph in a 35 mph zone," and that Fisk "had a blank expression on his face with mouth hanging open and blood-shot eyes," "extremely slurred" speech, "a strong odor of an alcoholic beverage on his breath" and "staggered and swayed side to side as he walked." It further recited that the officer warned Fisk that refusal to submit to a chemical test (breath, urine or blood) to determine the alcoholic content of his blood would result in his license being suspended; and that Fisk responded by saying: "I'm not going to take a test because I've got the money to buy a license. I'll get a lawyer, a real good lawyer, they can't take my license" and by answering "No" to the officer's separate requests to take each of the three tests.

Following the DMV's notice of his license suspension, Fisk requested and received a formal hearing. At the administrative hearing on August

---

if lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle under the influence of intoxicating liquor. The test shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe such person was driving a motor vehicle upon a highway while under the influence of intoxicating liquor. Such person shall be told that his failure to submit to or complete such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of six months.

"The person arrested shall have the choice of whether the test shall be of his blood, breath, or urine, and he shall be advised by the officer that he has such a choice....

". . . . . . . . . . . . .

"(b) If any such person refuses the officer's request to submit to, or fails to complete, a chemical test, the department, upon receipt of the officer's sworn statement that he had reasonable cause to believe such person had been driving a motor vehicle upon a highway while under the influence of intoxicating liquor and that the person had refused to submit to, or failed to complete, the test after being requested by the officer, shall suspend his privilege to operate a motor vehicle for a period of six months....

"(c) The department shall immediately notify such person in writing of the action taken and, upon his request in writing ... shall afford him an opportunity for a hearing in the same manner and under the same conditions as provided in Article 3 (commencing with Section 14100) of Chapter 3 of this division. For the purposes of this section, the scope of the hearing shall cover the issues of whether the peace officer had reasonable cause to believe the person had been driving a motor vehicle upon a highway while under the influence of intoxicating liquor, whether the person was placed under arrest, whether he refused to submit to, or failed to complete, the test after being requested by a peace officer, and whether, ... he had been told that his driving privilege would be suspended if he refused to submit to, or failed to complete, the test."

22, the arresting officer testified that he had personally arrested Fisk in the course of his duties as a police officer and had prepared the above document in his own handwriting within an hour of the arrest when "the events it describes [were] fresh in [his] mind" but that he had no independent recollection of the incident. The referee admitted the document in evidence under the exception to the hearsay rule for past recollection recorded and pursuant to Vehicle Code section 14108,[2] over Fisk's counsel's objection that it was "totally inadmissible" hearsay. Fisk did not testify; nor did his counsel present any evidence on his behalf.

Subsequently Fisk's license was suspended and Fisk sought a writ of mandate in the superior court. The court concluded that the "Officer's Statement" was hearsay, not admissible under any exception to the hearsay rule, which did not constitute substantial evidence, and license suspension based solely on such hearsay evidence violated due process. The court granted a peremptory writ ordering the DMV to set aside his suspension. This appeal followed.

*The Officer's Report Was Admissible Under the Official Records Exception to the Hearsay Rule*

The DMV contends, and we agree, that, in view of his testimony, the "Officer's Statement, Section 13353 Vehicle Code" constituted competent evidence since it qualified for admission in evidence as an official record, a well-recognized exception to the hearsay rule.[3]

Evidence Code section 1280 provides: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if:

"(a) The writing was made by and within the scope of duty of a public employee;

"(b) The writing was made at or near the time of the act, condition, or event; and

---

[2]That section provides in pertinent part: "At any formal hearing the department shall consider its official records and may receive sworn testimony . . . ."

[3]We, therefore, need not reach the question whether without the officer's testimony Vehicle Code section 14108 creates an independent statutory exception to the hearsay rule, nor the due process questions thereby posed. (See *Burkhart v. Department of Motor Vehicles* (1981) 124 Cal.App.3d 99 [177 Cal.Rptr. 175].)

"(c) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

The foundational requirement of subdivision (a) of section 1280 was established by the officer's testimony that, in the course of his duties, he personally arrested Fisk for drunk driving and wrote this report which was mandated by Vehicle Code section 13353. The timeliness condition (subds. (b), (c)) was met by the officer's testimony that he prepared the document within an hour of the arrest while the events he described were still fresh in his mind. The "sources of information ... indicate[d] its trustworthiness" (subd. (c)) since the writing consisted of a report of firsthand observations by the arresting officer.

The requirement of a trustworthy "method" of preparation (subd. (c)) was also satisfied. ■ "The trustworthiness requirement for this exception to the hearsay rule is established by a showing that the written report is based upon the observations of public employees who have a *duty* to observe the facts and report and record them correctly." (*People* v. *Baeske* (1976) 58 Cal.App.3d 775, 780 [130 Cal.Rptr. 35]; italics in original.) (See also Jefferson, Cal. Evidence Benchbook (1978 supp.) § 5.1, p. 98.) ■ The arresting officer had a duty under Vehicle Code section 13353 to submit a written "sworn statement" to the DMV reporting these observations and the licensee's refusal to submit to a chemical test. He performed that duty by filling out the "Officer's Statement, Section 13353 Vehicle Code" on an official DMV form[4] and signing it "under penalty of perjury." The officer's testimony that he personally wrote the report while "the events it describes [were] fresh in [his] mind" was sufficient to establish that the report accurately described the events he observed.

Moreover, the trustworthiness of the method of preparation of the report is also supported by the presumption, contained in Evidence Code section 664, that "official duty has been regularly performed." This presumption, which affects the burden of proof (see Evid. Code, §§ 606, 660), applies to police officers (see, e.g., *People* v. *Farrara* (1956) 46 Cal.2d 265, 269 [294 P.2d 21]; *August* v. *Department of Motor Vehicles* (1968) 264 Cal.App.2d 52, 65 [70 Cal.Rptr. 172]; *Whaley* v. *Jansen* (1962) 208 Cal.App.2d 222, 230 [25 Cal.Rptr. 184]) and may help lay the foundation for admissibility of evidence. (See Dutton, *The*

---

[4]Use of such a form has since become mandatory under Vehicle Code section 13353. (See Stats, 1978, ch. 911, § 4.)

*Official Records Exception to the Hearsay Rule in California* (1965) 6 Santa Clara Law. 1, 8; *Nilsson v. State Personnel Board* (1938) 25 Cal.App.2d 699, 704 [78 P.2d 467]; cf. *People v. Carbonie* (1975) 48 Cal.App.3d 679, 685 [121 Cal.Rptr. 831].)

We recognize, of course, that section 664 is expressly inapplicable "on an issue as to the lawfulness of [a warrantless] arrest." The obvious purpose of this exception is to codify the common law rule that the burden of proof as to the legality of an arrest shifts to the proponent upon a prima facie showing of illegality by proof that the arrest was made without a warrant. (See *Badillo v. Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23]; Assem. Com. of the Judiciary comment to Evid. Code, § 664.) It is true that one of the issues at the DMV hearing was whether Fisk was legally arrested. (See Veh. Code, § 13353, subds. (a), (c).) We do not, however, perceive that the exception to Evidence Code section 664 is intended to make the presumption that official duty is regularly performed inapplicable whenever there is an issue as to the foundation for evidence merely because one of multiple ultimate issues upon which that evidence is relevant[5] is the legality of an arrest.

Thus, section 664 places the burden with respect to the foundational issue of the trustworthiness of the method of preparation of the official report on the licensee instead of the officer. Accordingly, Fisk had the burden of showing that the officer failed in his duty to observe and report correctly the events described if Fisk opposed the admission of this report into evidence, even though the burden of proof with respect to the legality of the arrest remained with the DMV. Fisk, however, did not even attempt to controvert the presumptive accuracy of this official report.

Commentators have recognized the interrelationship between the official records hearsay exception and the presumption of proper performance of official duty. Thus, Wigmore points out that the essential "circumstantial probability of trustworthiness" justifying the common law exception to the hearsay rule for official statements "is related in its thought to the presumption that public officers do their duty. When it is a part of the *duty of a public officer* to make a statement as to a fact coming within his official cognizance, the great probability is that he

---

[5]Other issues at the hearing did not relate to the lawfulness of the arrest; they were whether Fisk was advised his license would be suspended for six months if he refused to submit to a chemical test, and whether he did so refuse.

does his duty and makes a correct statement.... The fundamental circumstance is that an official duty exists to make an accurate statement, and that this special and weighty duty will usually suffice as a motive to incite the officer to its fulfillment. The duty may or may not be one for whose violation a penalty is expressly prescribed. .... It is the influence of the official duty, broadly considered, which is taken as the sufficient element of trustworthiness, justifying the acceptance of the hearsay statement." (5 Wigmore, Evidence (Chadbourn rev. ed. 1974) § 1632, p. 618.) (Italics in original.)

Similarly, McCormick states: "The special trustworthiness of official written statements is found in the declarant's official duty and the high probability that the duty to make an accurate report has been performed. [Fn. deleted.]" (McCormick, Evidence (2d ed. 1972) § 315, p. 735.)

Moreover, the officer's lack of independent recollection of the event at the time of the hearing does not render his contemporaneous written sworn statement untrustworthy. It has been noted that the principal reasons for this well recognized hearsay exception for official records are (1) the presumption that a public official will perform his duty properly and (2) the unlikelihood that he will remember details independently of the record. (Advisory Com. Notes to Proposed Fed. Rules Evid., rule 803(8), 28 U.S.C.; see *Wong Wing Foo* v. *McGrath* (9th Cir. 1952) 196 F.2d 120, 123.) Given the volume of official police work, the officer's official written statement will usually be more reliable than his present memory. (McCormick, *supra*, § 315 at p. 736.)

Accordingly, sufficient foundation was laid for the admission in evidence of this official report under Evidence Code section 1280, the official records exception to the hearsay rule.[6]

*The Suspension Complied With Due Process*

■ The suspension of Fisk's license, solely on the basis of the officer's sworn statement, was supported by substantial evidence and did

---

[6]Indeed, sufficient foundation was also laid for admission of this document under Evidence Code section 1271, the business records exception to the hearsay rule, since the officer identified the document and testified to personally preparing it. Evidence that is admissible under section 1280 is also admissible under section 1271 if, as here, a "qualified witness testifies to its identity and the mode of its preparation." (Evid. Code, § 1271, subd. (c); see Law Revision Com. comment to Evid. Code, § 1280; Jefferson, Cal. Evidence Benchbook (1972), § 5.2, p. 97.)

not violate due process. As evidence admissible pursuant to Evidence Code section 1280, the statement constituted sufficient competent evidence to establish the facts necessary to warrant a suspension under Vehicle Code section 13353. The officer's recorded observation of Fisk's erratic driving and intoxicated appearance and conduct (bloodshot eyes, mouth hanging open, extremely slurred speech, alcoholic breath odor, and unsteady gait) demonstrated that when the police officer arrested Fisk,[7] he had reasonable cause to believe Fisk had been driving a car while under the influence of alcohol. Moreover, the officer's statement also adequately detailed facts demonstrating Fisk's refusal to submit to a chemical test of his breath, urine or blood after being requested to do so by the officer and warned of the consequences.

Nor was Fisk denied a due process right to cross-examine and confront the arresting officer. Fisk had the opportunity to confront the person who had made charges against him and to present evidence refuting such charges. (See *August* v. *Department of Motor Vehicles, supra,* 264 Cal.App.2d at p. 60.) The officer was present and testified at the hearing. In *Noll* v. *Department of Motor Vehicles* (1969) 274 Cal.App.2d 281 [79 Cal.Rptr. 236], the appellate court rejected a licensee's claim that his right of cross-examination at the DMV hearing was curtailed because the officer, though present, did not recollect some of the details. The court in *Noll* pointed out (*id.,* at pp. 285-286): "'The chief object of cross-examination is to test the credibility, knowledge, and recollection of the witness.' (*People* v. *Watson* (1956) 46 Cal.2d 818, 827 [299 P.2d 243].) [The licensee] successfully tested the knowledge and recollection of the witness and established that it was imperfect. (See Evid. Code, § 780, subd. (c).)" Here, the officer's lack of recollection was established by his direct testimony and the voir dire conducted by Fisk's counsel. Fisk, moreover, had the opportunity to cross-examine the officer respecting his practices in making such reports in an attempt to demonstrate their unreliability. He also had the opportunity to refute the report by his own testimony or that of other witnesses. There was nothing unfair about the conduct of this proceeding: the DMV presented the competent evidence in its possession; and the licensee, though he had apparently indicated a desire to challenge the validity of the summary license suspension on the basis of the sworn statement by requesting this formal hearing, chose to rest his case with-

---

[7]The officer's uncontroverted testimony established that appellant was placed under arrest as required by Vehicle Code section 13353, subdivision (c).

out offering any evidence whatsoever to contradict the officer's version of the events. Accordingly, the suspension of Fisk's license was proper.

The judgment is reversed with directions to enter judgment denying the writ of mandate.

Cobey, J., and Lui, J., concurred.