[No. A020972. First Dist., Div. Two. July 30, 1985.]

JACK ERNEST HUGHES, Plaintiff and Respondent, v.
DORIS V. ALEXIS as Director, etc., Defendant and Appellant.

**COUNSEL**

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Harold Teasdale and Eleanor Nisperos, Deputy Attorneys General, for Defendant and Appellant.

Walter J. Cannady for Plaintiff and Respondent.

**OPINION**

**SMITH, J.**—Jack Ernest Hughes' driving privileges were ordered suspended by the Department of Motor Vehicles (DMV), after a formal administrative hearing, for his found failure to submit to a chemical test of his blood, breath or urine as required by Vehicle Code section 13353.[1] This appeal by Doris V. Alexis, as Director of the DMV,[2] is from a December 15, 1982, judgment of the superior court granting a peremptory writ of mandate to compel the DMV to set aside its order of suspension. The superior court reasoned, in its statement of decision, that the DMV's order and supporting findings could not be sustained inasmuch as they were based on the sworn

---

[1]All undesignated statutory section references hereinafter are to the Vehicle Code unless otherwise indicated.

Amendments to section 13353 since the 1981 violation alleged in this case are not material to the issues presented.

[2]For sake of convenience, appellant Alexis shall be referred to as the DMV.

statement of the arresting officer (§ 13353, subd. (b)), who did not testify at the formal hearing. We will reverse.

## BACKGROUND

The incident in question was a collision allegedly occurring after midnight on December 4, 1981, when a car driven by Hughes ran a red light on San Pablo Avenue in Oakland and struck a car parked at the curb, pushing the struck car through an intersection and injuring its two occupants. Pertinent evidence at the hearing came from the arresting officer's sworn statement, admitted over objections by Hughes on hearsay and foundational grounds, testimony by a second officer who was present at the scene and testimony by Hughes himself.

The nonarresting officer, Kevin McCormick of the Oakland Police Department, testified that he overheard a police radio call that a cab driver at the accident scene had flagged down a passing reserve officer. Arriving within two minutes, McCormick saw Hughes on the ground being helped up by bystanders. The officer spoke with the cab driver and the reserve officer. The cab driver, Ambrose Maxon, related seeing Hughes drive southbound on San Pablo, run a red light, collide with the parked car and then get into an argument with the two occupants of the car. He further related that Hughes was then mugged by several bystanders, who took Hughes' valuables, wallet and identification. McCormick relayed that information to Officer Denise Brown, who arrived shortly after he did. McCormick thereafter focused his investigation on the reported mugging, although he assisted Officer Brown in administering field sobriety tests to Hughes. McCormick observed from interviewing Hughes and watching him take the sobriety tests that Hughes was intoxicated. McCormick testified that he never saw Hughes behind the wheel of his car, did not recall Officer Brown giving the then-required section 13353 advisements[3] and did not

---

[3] In 1981, subdivision (a) of section 13353 required that the following advisements be given to a person arrested upon reasonable cause to believe that the person was driving under the influence:

". . . Such person shall be told that his failure to submit to or complete . . . a chemical test [of his blood, breath or urine for the purpose of determining the alcoholic content of his blood] will result in the suspension of his privilege to operate a motor vehicle for a period of six months.

"The person arrested shall have the choice of whether the test shall be of his blood, breath or urine, and he shall be advised by the officer that he has such a choice. . . .

"Such person shall also be advised by the officer that he does not have the right to have an attorney present before stating whether he will submit to a test, before deciding which test to take, or during administration of the test chosen, and shall also be advised by the officer that, in the event of refusal to submit to a test, such refusal may be used against him in a court of law."

recall Hughes' arrest, although he saw that Hughes was put into the back of a patrol car.

Hughes testified that on the date in question, December 4th, he was operating a vehicle and was involved in an accident. However, he had "no recollection of driving at the time the accident occurred or prior to that for some length of time." He admitted having consumed some alcoholic beverage prior to "driving the vehicle" on that occasion. He recalled, "I was injured [a minor head injury] but I don't know whether it was a result of the accident or the mugging." He did not recall being advised, upon his arrest, that he was being arrested for driving under the influence. He recalled being asked to take a "chemical test" and refusing to take one but did not recall being told what kinds of tests were available. He did not recall being advised that he had no right to have counsel present. As for advisement of the possible loss of his driving privileges, Hughes testified, "The officer said that you would automatically have a six months suspension and I responded, 'My God,' without the presence of mind of then taking a test."

A two-page sworn statement prepared by Officer Brown, dated the same day as the incident and marked received by the DMV, was received into evidence as an official record of the DMV (§ 14108) over objection from Hughes that the document was hearsay and lacked a proper foundation for admission.[4] The statement recites that an unknown witness (the cab driver, according to Officer McCormick's testimony) reported seeing the accident, that a reserve officer arrived on the scene to find Hughes leaning on his vehicle's door, and that Hughes identified himself (presumably to Officer Brown), reported being mugged and said that he could not remember what happened. Hughes' breath, bloodshot and watery eyes, staggering and swaying, and slurred speech were symptoms of intoxication. The statement describes in detail Hughes' failure to pass several field sobriety tests and indicates that he was arrested, was read the chemical test advisements as printed on the sworn statement form and, when asked to submit to a chemical test, refused, saying, "I don't want to take any test." Hughes was given *Miranda* admonitions, according to the statement, at "0025" hours.

Officer Brown, the author of the sworn statement, did not testify. The hearing transcript shows that a subpena issued by the DMV for her appear-

---

[4]At the time of the incident, section 13353 provided, in subdivision (b): "If any such person refuses the officer's request to submit to, or fails to complete, a chemical test, the department [DMV], upon receipt of the officer's sworn statement that he had reasonable cause to believe such person had been driving a motor vehicle upon a highway . . . while under the influence of intoxicating liquor and that the person had refused to submit to, or failed to complete, the test after being requested by the officer, shall suspend his privilege to operate a motor vehicle for a period of six months. The officer's sworn statement shall be submitted on a form furnished or approved by the department. . . ."

ance was returned (evidently unserved) by the Oakland Police Department with an explanatory notation that the officer was in Napa and no longer with the department.

## APPEAL

■ The DMV bore the burden at the consent hearing of proving all facts necessary to support suspension of driving privileges. (*Daniels* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 532, 536 [189 Cal.Rptr. 512, 658 P.2d 1313].) Based on the documentary and testimonial evidence presented, the referee found, in favor of the DMV, that Officer Brown had reasonable cause to believe that Hughes was driving under the influence, that Hughes was lawfully arrested and admonished as to the consequences of failure to submit to a chemical test, and that he refused to so submit after being requested by the officer to do so. Acting on those findings, the DMV ordered Hughes' driving privileges suspended. ■ The superior court, upon review of that action, was obligated to exercise its independent judgment on the administrative record (*Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392, 398 [188 Cal.Rptr. 891, 657 P.2d 383]; *Lee* v. *Department of Motor Vehicles* (1983) 142 Cal.App.3d 275, 284 [191 Cal.Rptr. 23]),[5] which means that the burden then rested on Hughes, as the complaining party, to convince the court that the administrative decision was contrary to the weight of the evidence (*Drummey* v. *State Bd. of Funeral Directors* (1939) 13 Cal.2d 75, 85 [87 P.2d 848]). ■ The court here, however, evidently did not exercise its independent judgment on the *entire* administrative record, for it concluded as a matter of law that the arresting officer's sworn statement was incompetent, hearsay evidence.

The questions for review are (1) whether the arresting officer's statutory sworn statement (§ 13353, subd. (b)) is admissible in formal DMV hearings and (2) if so, whether this violates a licensee's constitutional rights to confront and cross-examine adverse witnesses.

### I

The sworn statement required by section 13353 is hearsay and, as such, would be inadmissible in a civil action unless it falls within a recognized exception to the hearsay rule. (Evid. Code, § 1200; cf. *Daniels* v. *Department of Motor Vehicles, supra,* 33 Cal.3d 532, 537.) Section 11513 of the Government Code, part of the Administrative Practice Act (APA) applicable

---

[5]The standard of review for license suspension cases was unsettled at the time of the superior court's action in this case, which preceded the decision in *Berlinghieri,* cited above. Nevertheless, the DMV invited the court to precautionarily use the independent judgment test in light of the existing uncertainty.

to administrative proceedings generally, provides in subdivision (c) that "[h]earsay evidence may be used for the purpose of supplementing or explaining other evidence but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions." No effort was made at the administrative hearing to bring the sworn statement in this case within a hearsay exception recognized in civil actions (see Evid. Code, §§ 1271 [business record], 1280 [record by public employee]; *Daniels* v. *Department of Motor Vehicles, supra,* 33 Cal.3d at p. 541; *Fisk* v. *Department of Motor Vehicles* (1981) 127 Cal.App.3d 72, 76-79 [179 Cal.Rptr. 379, 31 A.L.R.4th 905]). However, the DMV contends that the sworn statement is taken outside the purview of the APA by section 14112, which provides that "[a]ll matters in a formal hearing *not covered by this chapter* [Division 6, Chapter 3 (§§ 13800-14401)] shall be governed, as far as applicable, by the provisions of the Government Code relating to administrative hearings, and particularly by [sections 11500-11528] of the Government Code." (Italics added.)

Section 14104, governing *informal* hearings, provides for proceedings to be "conducted in a completely informal manner" and specifically states that "[t]he department may consider any of the records or reports referred to in Section 14108." Section 14108, in turn, provides in part that "[a]t any *formal* hearing the department *shall consider its official records* and may receive sworn testimony . . . ."[6] (Italics added.) ■ The provisions of the APA have long been held inapplicable to informal DMV hearings under section 14104. (*Hough* v. *McCarthy* (1960) 54 Cal.2d 273, 286-287 [5 Cal.Rptr. 668, 353 P.2d 276]; *Fankhauser* v. *Orr* (1968) 268 Cal.App.2d 418, 423 [74 Cal.Rptr. 61].) In *Fankhauser,* a case in which an arresting officer's section 13353 sworn statement was admitted in evidence at an informal hearing over the licensee's hearsay objection, this court (Division Two) examined the statutory scheme outline above and concluded that the sworn statement, having been "duly filed" with the DMV under section 13353, was "an official record of the Department within the meaning of Vehicle Code, section 14108. As such, it was entitled to consideration at

---

[6]The full text of section 14108 is this: "At any formal hearing the department shall consider its official records and may receive sworn testimony and shall be entitled to receive as evidence either at the hearing or subsequent to the hearing and with the consent of the applicant or licensee and use as proof concerning any fact relating to the ability of the applicant or licensee to safely operate a motor vehicle any or all of the following:

"(a) Reports of attending or examining physicians.

"(b) Reports of special investigators appointed by the director or department to investigate and report upon any facts relating to the ability of the person to operate a vehicle safely.

"(c) Properly authenticated reports of hospital records, excerpts from expert testimony received by the department or a hearing board upon similar issues of scientific fact in other cases and the prior decisions of the director upon such issues."

either an informal or formal hearing before the Department." (*Fankhauser v. Orr, supra,* 268 Cal.App.2d at p. 423.) By finding statutory authorization for admission of the hearsay statement, this court was able to distinguish settled case law authority holding that hearsay *not* made admissible by statute is properly admitted (as prima facie evidence) only where there is no objection made and the issue is thereby waived. (*Id.,* at p. 422; *August* v. *Department of Motor Vehicles* (1968) 264 Cal.App.2d 52, 64 [70 Cal.Rptr. 172]; see *Fallis* v. *Dept. of Motor Vehicles* (1968) 264 Cal.App.2d 373, 379 [70 Cal.Rptr. 595].)[7]

The *Fankhauser* holding that section 13353 sworn statements are admissible as official records, in either formal or informal DMV hearings (§§ 14104, 14108), was implicitly followed in *Burkhart* v. *Department of Motor Vehicles* (1981) 124 Cal.App.3d 99 [177 Cal.Rptr. 175], and expanded to hold that the sworn statement is not only admissible as prima facie proof of a fact, but also that it is sufficient evidence *alone* to support a finding in the face of credible and competent conflicting evidence. (*Id.,* at pp. 104-106, 108, 112.) That holding, expressed in a case involving an informal hearing, was then followed and applied by the two-justice majority in *Mackler* v. *Alexis* (1982) 130 Cal.App.3d 44, at pages 55-56 [181 Cal.Rptr. 613]. *Mackler,* unlike previous cases, involved the admission of a sworn statement at a *formal* hearing, as here.

The DMV urges this court to endorse and follow the expanded holdings of *Burkhart* and *Mackler,* which in practical effect raise the section 14108 authority to "consider" official DMV records in suspension hearings to the level of a hearsay exception. Hughes, on the other hand, urges that we adopt the contrary view expressed by Justice Dalsimer in his dissent in *Mackler* (*Mackler* v. *Alexis, supra,* 130 Cal.App.3d 44, 65-67). As will appear, it is unnecessary in this case to take either position.

We initially note that dictum in the decision of our state Supreme Court in *Daniels* v. *Department of Motor Vehicles, supra,* a 1983 decision,[8] casts doubt on the *Burkhart* holding that an objected-to sworn statement *alone* may support a finding made on conflicting evidence. At issue in *Daniels* was whether an objected-to "SR 1 report," a DMV form filled out by the driver of any vehicle involved in an accident pursuant to the mandate of section 16000, part of the California Financial Responsibility Law (§ 16000 et seq.), is alone a sufficient evidentiary basis upon which to suspend a

---

[7]The court in *August,* in its discussion of the admissibility of section 13353 sworn statements, did not discuss sections 14104 and 14108 as a possible statutory basis for their admission. (But see *Fallis* v. *Dept. of Motor Vehicles, supra,* 264 Cal.App.2d 373, 380, fn. 1.) *August* and *Fallis* both involved the admission of sworn statements without objection.

[8]The superior court in this case did not have the advantage of the *Daniels* decision at the time of its decision in 1982.

person's license for failure to file an accident report and proof of financial responsibility. Adhering to the principle that hearsay alone, unless permitted by statute, is incompetent (i.e., unsubstantial) evidence to support an administrative ruling (*Walker* v. *City of San Gabriel* (1942) 20 Cal.2d 879, 881 [129 P.2d 349, 142 A.L.R. 1383]; see Gov. Code, § 11513, subd. (c)), the Supreme Court found no hearsay exception applicable and so concluded that an SR 1 report, the only evidence at the suspension hearing in that case, is "in itself insufficient to establish a prima facie showing of the facts supporting the suspension of a driver's license." (*Daniels, supra,* 33 Cal.3d at pp. 536-537, 541.)

First rejecting the business record exception of Evidence Code section 1271 as a basis for admission of the report (*Daniels, supra,* 33 Cal.3d at pp. 537-538 [not made in the regular course of a citizen driver's business and no way for the custodian of the writing (DMV) to establish its identity and mode of preparation]), the court examined the "official record" language of section 14108 (see § 16075, subd. (d), incorporating the hearing procedures of § 14100 et seq.) and rejected that basis as well. The court found in section 14108 no clear legislative authorization for sole reliance on the SR 1 report and found insufficient indicia of reliability in the preparation of the report to render it legally sufficient alone to support a finding, noting that evidence which is "admissible" is not necessarily "sufficient" to support a finding absent other competent evidence. (33 Cal.3d at p. 538 & fn. 3.)[9] "Unlike statutes that clearly authorize exceptions to the hearsay rule, section 14108 does not reflect any factors providing the necessary competency, reliability, and trustworthiness that would transform the SR 1 report into legally sufficient evidence. That the report is made an 'official record' of the D.M.V. does not suffice to create a greater degree of competency, reliability or trustworthiness in the *preparation* of the report. . . ." (*Id.,* at pp. 538-539; fn. omitted.)

The court in *Daniels* next examined the parallel, implied consent case law development through *Burkhart* and, without passing on the "viability" of *Burkhart,*[10] found a sufficient distinguishing feature in the kind of hearsay at issue. "The result in *Burkhart* [admissibility and sufficiency of an uncorroborated sworn statement to establish refusal of a test despite contrary

---

[9]"We conclude that section 14108, while allowing *consideration* of the official records of the D.M.V., does not provide authority for allowing the SR 1 to form the sole basis for a license suspension. [¶] The legislative mandate of Government Code section 11513 against sole reliance on hearsay evidence is emphatic; the language of section 14108 fails to express a clear legislative intent to supersede section 11513. . . ." (Fns. omitted; *Daniels, supra,* 33 Cal.3d 532, 538.)

[10]Inexplicably, the court in *Daniels* does not discuss or acknowledge the 1982 case decided the year before, *Mackler* v. *Alexis, supra,* 130 Cal.App.3d 44.

testimony] could be justified under the theory that the report filed by an officer under section 13353 would qualify under Evidence Code section 1271 as a business record or under Evidence Code section 1280 as an official record. Unlike the driver involved in an automobile accident, the statement under section 13353 is made by the officer in the regular course of his or her 'business.' In addition, the officer's report is a writing 'made by and within the scope of duty of a public employee,' and meets the other criteria of Evidence Code section 1280, and would thus qualify under that statutory exception to the hearsay rule as well. Whether these distinctions justify sole reliance on the officer's report in an implied consent hearing we need not now decide." (*Daniels, supra,* 33 Cal.3d 532, 541.)

*Daniels* provides no reason to affirm the judgment in this case. The decision implicitly recognizes that a sworn statement is admissible at a consent hearing as an "official record" under section 14108, whether or not that section establishes a full hearsay exception. The only question raised by the exception-nonexception distinction is the sufficiency of the evidence to support, *without corroboration,* a finding of disputed fact necessary to the suspension of a driver's license. The record in the instant case contains competent direct and/or circumstantial evidence to corroborate every disputed element of the DMV's required proof—reasonable cause, lawful arrest, advisement, request and refusal. The request and refusal were independently established from Hughes' own testimony; lawful arrest is inferable from his being placed in the back of the police patrol car; proper advisement is partially admitted by Hughes, leaving the inference that all parts of the advisements were given; Officer McCormick's observations support reasonable cause to believe that Hughes was intoxicated, as does Hughes' own admission of drinking; and reasonable cause to believe that Hughes was *driving* while intoxicated is established by Hughes' admission that he was driving the car (by implication, the last thing he remembered before the accident) and by the absence of anything in the record to suggest that there was anyone else in the car with him.[11] There is thus solid prima facie proof, even if the sworn statement be deemed not to fall within any hearsay exception. Also, for the guidance of the superior court in the exercise of its independent judgment review on remand, it should be noted that the claimed conflicts with the DMV's proof in this case are primarily Hughes' lack of memory, which does not necessarily contradict, much less overcome, a prima facie showing. (See, e.g., *Lee v. Department of Motor Vehicles, supra,* 142 Cal.App.3d 275, 284; *August v. Department of Motor Vehicles, supra,* 264 Cal.App.2d 52, 66.)

---

[11]None of this corroboration depends in any way on the hearsay statements of the cab driver or reserve officer.

The superior court, it appears, gave no weight at all to the sworn statement, evidently because it considered the document inadmissible. This was error which prevented the proper exercise of independent judgment. The judgment must therefore be reversed and the cause remanded for a proper adjudication. Because there is ample corroboration of the sworn statement on all material issues, we have no need to decide whether the sworn statement, standing alone, would provide legally sufficient evidence.

## II

■ The question remains whether the statutory admissibility of the arresting officer's sworn statement, absent the appearance of the officer at the hearing, violates a licensee's state and federal due process rights to confront and cross-examine witnesses.

The question of "what process is due" a licensee in precisely this context was thoroughly considered in *Burkhart* and again in *Mackler*. Both courts concluded (less one dissenting voice in *Mackler*) that the statutory scheme allowing admission of the arresting officer's sworn statement does not violate due process rights, even though the arresting officer is absent from the hearing. Applying the relevant analyses developed in federal and state decisions (*Mackey* v. *Montrym* (1979) 443 U.S. 1, 10-19 [61 L.Ed.2d 321, 329-335, 99 S.Ct. 2612]; *Mathews* v. *Eldridge* (1976) 424 U.S. 319, 335 [47 L.Ed.2d 18, 33, 96 S.Ct. 893]; *August* v. *Department of Motor Vehicles, supra,* 264 Cal.App.2d 52, 60-62; see also *Fankhauser* v. *Orr, supra,* 268 Cal.App.2d 418, 423), both courts concluded that the licensee's rights to confront and cross-examine the arresting officer who authored the sworn statement were adequately protected by the licensee's opportunity and right to produce contrary evidence at the hearing and, if desired, subpena and call the arresting officer on his or her own. (*Mackler* v. *Alexis, supra,* 130 Cal.App.3d 44, 60-62; *Burkhart* v. *Department of Motor Vehicles, supra,* 124 Cal.App.3d 99, 104, 110-112.)

Hughes advances no analysis to counter *Burkhart* and *Mackler* on the due process issue; we therefore decline to reexamine the issue. ■ However, a practical problem arose in this case, procedurally, and the same problem caused the courts in both *Burkhart* and *Mackler* to authorize the taking of limited new evidence upon remand. The records in both cases showed that the licensee was led to believe that the appearance by the arresting officer was assured without the need for independent action on their part, and it was only at the time of the hearing that they learned otherwise. Thus, the licensees could not be faulted for failure to serve their own subpenas, and fairness required that they be given an opportunity to do so. The reviewing court in each case therefore directed that, upon remand, the superior court

conduct a further hearing, should the licensee request that opportunity, in which to confront and cross-examine the arresting officer. The superior court could, in its discretion, remand to the administrative body for such a hearing. (*Mackler* v. *Alexis, supra,* 130 Cal.App.3d 44, 63; *Burkhart* v. *Department of Motor Vehicles, supra,* 124 Cal.App.3d 99, 113; Code Civ. Proc., § 1094.5, subd. (e).)

Here, as in *Mackler,* the arresting officer was under subpena and, for all that the record reveals, was expected to appear until it was revealed at the hearing that the subpena had been returned, evidently unserved, with a notation that the officer was no longer employed by the same police department. Also as in *Mackler,* the record does not otherwise disclose the reason for the officer's failure to appear. (*Mackler, supra,* 130 Cal.App.3d 44, 63.) A remand of the case with directions for a further hearing, at Hughes' timely request, is therefore appropriate.

■ The superior court did not indicate what its decision would have been had it adjudged the sworn statement admissible. Reversal of the judgment granting the writ thus requires, at the least, remand for that decision to be made. The state of the evidence is not such that this court can uphold the judgment as a matter of law. Nor is the evidence so one-sided on all issues that the DMV is entitled to judgment as a matter of law. Furthermore, as discussed above, fairness requires that Hughes be given an opportunity, if desired, to subpena, confront and cross-examine the arresting officer, either at a hearing in superior court or, at the superior court's discretion, upon a remand of the cause to the DMV for that purpose. (*Mackler* v. *Alexis, supra,* 130 Cal.App.3d 44, 63; *Burkhart* v. *Department of Motor Vehicles, supra,* 124 Cal.App.3d 99, 113.)

Accordingly, the judgment is reversed; the cause is remanded to the superior court for further proceedings consistent with the views expressed herein.

Kline, P. J., and Rouse, J., concurred.