[Civ. No. 62477. Second Dist., Div. One. Mar. 24, 1982.]

DAVID MICHAEL MACKLER, Plaintiff and Respondent, v.
DORIS ALEXIS, as Director, etc., Defendant and Appellant.

COUNSEL

George Deukmejian, Attorney General, Richard D. Martland, Assistant Attorney General, Henry G. Ullerich and Christopher C. Foley, Deputy Attorneys General, for Defendant and Appellant.

Pancer & Siegman and Hugh M. Siegman for Plaintiff and Respondent.

OPINION

**HANSON (Thaxton), J.—**

INTRODUCTION

Doris Alexis, Director of the Department of Motor Vehicles (hereinafter referred to as the DMV), appeals a judgment of the superior court directing a peremptory writ of mandate to issue commanding the DMV to permanently refrain from suspending or revoking the driver's license of petitioner David Michael Mackler (hereinafter petitioner and/or Mackler) as a result of his alleged refusal to submit to one of the sobriety tests (blood, breath or urine) required by the implied consent law. (Veh. Code, § 13353.)[1]

FACTS

On December 3, 1979, Mackler was arrested by Santa Monica Police Officer John Henry and charged with driving under the influence of alcohol in violation of section 23102, subdivision (a). He was taken to the police station and advised of the requirement to submit to a sobriety

---

[1]Unless otherwise indicated, all statutory references are to the Vehicle Code.

test (blood, breath or urine) to determine the alcoholic content of his blood as provided by section 13353. Following his subsequent appearance for trial on the criminal case, all charges were dropped and the case was dismissed.

Arresting Officer Henry filed a sworn statement with the DMV alleging that Mackler had refused to submit to a blood, breath or urine test. The DMV notified Mackler that his driver's license was to be suspended for a period of six months pursuant to section 13353, subdivision (b).[2] Thereupon, Mackler requested a formal hearing which was conducted before Referee Chatman of the DMV on March 11, 1980.

At the hearing Mackler appeared accompanied by counsel. At the beginning of the hearing Referee Chatman for the record noted that Officer Henry was not present; that "the subpoena was sent to the Santa Monica Police Department and was returned on 2-22-80 indicating that Officer Henry was terminated and is no longer with the Santa Monica Police Department. There has been no further contact or attempt to locate the officer." The DMV sought to introduce in evidence the arresting officer's written sworn statement that Mackler on arrest manifested objective symptoms of alcohol intoxication, that the officer read to Mackler a statement explaining the requirements of section 13353, and that Mackler refused to choose a test.

Counsel for Mackler did not request a continuance to insure the presence of Officer Henry but objected to introduction of the arresting officer's sworn statement on the grounds that (1) the statement constituted inadmissible hearsay and (2) admission of the statement would deprive Mackler of his fundamental right to confront and cross-examine the sole witness against him. Over his objections the hearing officer admitted the sworn statement into evidence. No evidence other than the

---

[2]Section 13353, subdivision (b), presently provides in full: "If any such person refuses the officer's request to submit to, or fails to complete, a chemical test, the department, upon receipt of the officer's sworn statement that he had reasonable cause to believe such person had been driving a motor vehicle upon a highway or upon other than a highway in areas which are open to the general public while under the influence of intoxicating liquor and that the person had refused to submit to, or failed to complete, the test after being requested by the officer, shall suspend his privilege to operate a motor vehicle for a period of six months. The officer's sworn statement shall be submitted on a form furnished or approved by the department. No such suspension shall become effective until 10 days after the giving of written notice thereof, as provided for in subdivision (c)."

statement, the order of suspension, the request and the notice for hearing was introduced by the DMV.

The written sworn statement of arresting Officer Henry filed in accordance with the implied consent statute and utilized as evidence by the hearing officer recited Officer Henry's observations that Mackler was stopped at 1:45 in the morning of December 3, 1979, because he (Mackler) was observed "driving E/B Wilshire #1 lane at approx. 75 mph." As objective symptoms of Mackler's alcoholic intoxication Officer Henry noted "red eyes-alcoholic breath-impaired balance & coordination." The statement further recited that the complete requirements of section 13353 from the printed form were read to the licensee.[3] Finally Officer Henry indicated that Mackler refused to submit to or failed to complete any such test. The refusal or failure was indicated by the following statements or actions: "Subject was arguementative [*sic*], refused to listen without continually interrupting. I explained the section 13353 cvc several (5-6) times to Mackler. However he would not choose a test." The sworn statement disclosed the presence of a witness "SMPD Matron J. Aran."

After Officer Henry's written sworn statement was introduced into evidence petitioner Mackler was asked the following question by his attorney: "[M]r. Mackler, on 12-3-79 did you refuse to take a blood, urine or breath test for the purpose of determining the alcoholic content in your blood which allegedly was offered to you by Officer Henry?" He responded, "No, I did not refuse." At this point his counsel rested his case and advised the hearing officer that since the burden was on the DMV to prove its allegations by evidence other than by a hearsay document, there was no need for Mackler testifying further. When Referee Chatman attempted to question Mackler as to whether the officer had asked him to submit to a chemical test on the date in question, his attorney indicated that he did not wish Mackler to testify further or to

---

[3]The licensee was informed as follows: "You are required by state law to submit to a chemical test to determine the alcoholic content of your blood. You have a choice of whether the test is to be of your blood, breath or urine. If you refuse to submit to a test or fail to complete a test, your driving privilege will be suspended for a period of six months. You do not have the right to talk to an attorney or to have an attorney present before stating whether you will submit to a test, before deciding which test to take, or during the administration of the test chosen. If you are incapable, or state you are incapable, of completing the test you choose, you must submit to and complete any of the remaining tests or test."

respond to any of Referee Chatman's questions. Since neither the DMV or licensee Mackler had any further evidence to present, the hearing was terminated following a closing statement by the licensee's counsel.

On July 3, 1980, the DMV on the basis of the evidence introduced at the hearing notified Mackler that his driver's license was suspended for a period of six months. On July 16 Mackler filed with the superior court a verified petition for a writ of mandamus ordering the DMV to revoke and set aside the suspension.

Petitioner Mackler based his "Petition for Alternative Writ of Mandamus" before the superior court "on the ground that Respondent's [DMV] sole evidence against Petitioner is inadmissible hearsay evidence and that Petitioner has successfully met his burden of proof by his oral testimony. Introduction of the arresting officer's sworn statement deprived Petitioner of due process of law since he was prevented from exercising his fundamental right to cross-examine the principal witness against him."

Following hearing on August 8, 1980, the trial court granted a peremptory writ of mandate ordering the DMV to absolutely and permanently desist and refrain from suspending or revoking Mackler's license. The court below found, inter alia, that Mackler rebutted the allegations in the arresting officer's sworn statement; that the admission into evidence of the officer's sworn statement was error since the statement constituted inadmissible hearsay; and that the introduction of the statement into evidence under the circumstances of the case deprived Mackler of due process since he had no opportunity to cross-examine the police officer.

### ISSUES

The determinative issues raised on this appeal by the DMV are: (1) whether or not the written sworn statement of Officer Henry made pursuant to section 13353 falls within an exception to the hearsay rule and therefore is admissible hearsay, and (2) whether or not Mackler was deprived of due process in that he was not afforded an opportunity to confront and cross-examine Officer Henry who prepared the written sworn statement. The DMV also contends on appeal that Mackler failed to rebut adequately the evidence represented by Officer Henry's written sworn statement.

DISCUSSION

*General*:

It is well established that California's "implied consent" law, section 13353, constitutes a constitutional method of regulating the driving privilege.

In *Anderson* v. *Cozens* (1976) 60 Cal.App.3d 130 [131 Cal.Rptr. 256], this court reversed a peremptory writ of mandate issued by the trial court setting aside a decision of the DMV suspending a motorist's driving privileges for six months for his refusal to submit to one of the blood alcohol tests required by section 13353. We rejected a claim that the motorist was denied equal protection of the law because other litigants facing the loss of state-granted licenses issued by agencies other than the DMV were entitled to a hearing pursuant to the Administrative Code.

In *Anderson* in rejecting the denial of equal protection argument, applying the strict standard employed to suspect classifications or fundamental interests, we pointed out at pages 143-144 that "[t]he reasonable, compelling and legitimate state purposes for Section 13353 are both immediate and long-range in nature. The immediate purpose is to obtain the best evidence of blood-alcohol content at the time of the arrest of a person reasonably believed to be driving while intoxicated [citation] and to avoid the possible violence which could erupt if forcible tests were made upon a recalcitrant and belligerent inebriate in order to obtain that best evidence [citations].

"The long-range purpose of Section 13353 is to inhibit intoxicated persons from driving on highways [citations] and thus reduce the carnage and slaughter on California freeways and byways caused by drunk drivers [citations] which 'now reaches the astounding figures only heard of on the battlefield' (*Breithaupt* v. *Abram* (1957) 352 U.S. 432, 439 . . .)." (Fn. omitted.)

In *Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70 [177 Cal.Rptr. 566, 634 P.2d 917], the California Supreme Court with finality upheld the statute against broad constitutional attack. The court therein noted: "[P]ast cases have upheld the constitutionality of section 13353 against claims that the statute (1) violates the driver's privilege against self-incrimination, (2) authorizes an unreasonable

search or seizure, (3) denies equal protection to variously defined classes, and (4) fails to satisfy procedural due process requirements." (*Id.*, at p. 73, fns. omitted.)

In the case at bench the fact that the criminal action for violation of section 23102, subdivision (a), was dismissed is irrelevant. In *Anderson v. Cozens, supra*, 60 Cal.App.3d 130, this court held that section 13353 authorizes the suspension of an individual driver's license for failure to submit to the sobriety test without any finding that the individual is, in fact, intoxicated.

"The Legislature had a sufficient reason for requiring a chemical test, and for providing a simple administrative sanction to enforce that requirement. The combination of criminal punishment and administrative sanctions which are imposed upon a person convicted of drunk driving [citations] serve a different purpose and, in a particular case, may be more or less onerous than the sanction imposed under section 13353.

"The classes are different. All who refuse the chemical test are subject to the sanction of section 13353, and all who drive under the influence are subject to the penalties provided for that offense. A driver may fall into either class, or neither or both, and will receive the treatment which the law provides for the class or classes in which he places himself. [Citation.]" (*Walker v. Department of Motor Vehicles* (1969) 274 Cal.App.2d 793, 796 [79 Cal.Rptr. 433].)

Thus, proceedings relating to the suspension of Mackler's driving privileges upon the ground of refusal to submit to a chemical test are civil in nature rather than criminal. (*Fallis v. Dept. of Motor Vehicles* (1968) 264 Cal.App.2d 373, 379 [70 Cal.Rptr. 595]; *McDonnell v. Department of Motor Vehicles* (1975) 45 Cal.App.3d 653, 662 [119 Cal. Rptr. 804].) A licensee who refuses to submit to any of the alternative types of tests under section 13353, if other conditions prescribed by the statute also exist, renders himself liable to mandatory suspension of his driver's license.

*The Hearsay Issue*:

In *August v. Department of Motor Vehicles* (1968) 264 Cal.App.2d 52 [70 Cal.Rptr. 172], an *informal* hearing was held before a DMV hearing officer in which licensee August appeared without counsel and

testified. The licensee did not object to the hearing officer's use of the police officer's statement and arrest reports and did not request an opportunity to cross-examine the arresting officer.

The reviewing court in *August* reversed the trial court's judgment granting a writ of mandamus against the DMV. The appellate court reasoned that a police officer's sworn statement made pursuant to section 13353 may support a finding by the referee only if not contradicted by other evidence. The court noted that the unrepresented licensee at the DMV hearing did not object to the admission of the officer's sworn statement, and that the statement should possess the objectivity of prima facie evidence if received without objection and without a request to cross-examine the officer.

In *Fallis* v. *Dept. of Motor Vehicles, supra,* 264 Cal.App.2d 373 (Fourth Dist., Div. One, the same appellate court that decided *August*), the reviewing court was again faced with an *informal* hearing before a DMV hearing officer at which the licensee Fallis appeared without counsel. The arresting officers were not present; licensee did not request their presence and did not object to the introduction of the officers' sworn statement and arrest reports on the ground of hearsay. However, the licensee, amongst other things, presented evidence by way of a denial that the arresting officer had reasonable cause to suspect that he had been operating a motor vehicle while under the influence of intoxicating liquor in that the officer did not actually see him driving erratically but was told by others that he had been driving erratically. Licensee Fallis acknowledged that the police requested him to submit to a blood, breath or urine test at the arrest scene but that "[he] never did refuse."

The *Fallis* court stated at page 379: "The sworn statement of the arresting officer provided for by section 13353, Vehicle Code, is a sufficient basis for the summary suspension of a license if the licensee does not ask for a hearing; and in an informal hearing the statement should be and is sufficient *prima facie* evidence of any matter as to which there is no conflicting evidence. We are of opinion, however, that the statement in form of a conclusion that the arresting officer had reasonable cause is not alone sufficient to overcome evidence to the contrary." (Original italics.)

In *Fankhauser* v. *Orr* (1968) 268 Cal.App.2d 418 [74 Cal.Rptr. 61] (First Dist., Div. Two), the DMV appealed from a judgment granting licensee Fankhauser a peremptory writ of mandate compelling the vaca-

tion of certain orders suspending Fankhauser's driver's license. Since the licensee failed to indicate whether he desired a formal or informal hearing, the latter type (*informal*) was conducted. The licensee was represented at the informal hearing by counsel, who objected, amongst others, to the use of the arresting officer's sworn statement made pursuant to section 13353 on the ground that it was hearsay.

Solely on the basis of evidence consisting of the officer's sworn statement and the licensee's testimony, the referee made findings which resulted in an order suspending Fankhauser's license for six months.

Seeking a writ of mandate before the superior court licensee argued that he was deprived of a fair hearing by the DMV because it had produced no witnesses and had relied solely on the arresting officer's sworn statement, despite the fact that introduction of the sworn statement was vigorously objected to on the ground that it was hearsay and that licensee was deprived of an opportunity to cross-examine the officer.

The superior court granted licensee Fankhauser a peremptory writ of mandate commanding defendant to set aside its decision upholding the suspension of Fankhauser's license on the ground that Fankhauser was so intoxicated at the time of his arrest that he was incapable of refusing to submit to a chemical test to determine the alcoholic content of his blood.

The Court of Appeal reversed the judgment granting Fankhauser a peremptory writ of mandate and directed the trial court to enter judgment for defendant [DMV], holding that a driver who refused or manifested an unwillingness to take the required test was subject to the license suspension provisions of section 13353 "regardless of the degree of his voluntary intoxication or lack of understanding resulting therefrom...." citing *Bush* v. *Bright* (1968) 264 Cal.App.2d 788, 793 [71 Cal.Rptr. 123].

The *Fankhauser* court after referring to and acknowledging the holdings in *August* v. *Department of Motor Vehicles, supra*, 264 Cal.App. 2d 52, and *Fallis* v. *Dept. of Motor Vehicles, supra*, 264 Cal.App.2d 373, observed that "the question squarely presented in the instant case is whether such statutory authorization for the admission of hearsay does exist." The court answered the question in the affirmative. We quote at length from *Fankhauser*, 268 Cal.App.2d at pages 422-423: "Vehicle Code, section 13353, subdivision (c), provides that where the

licensee makes a timely request therefor, he shall be afforded a hearing 'in the same manner and under the same conditions as provided in Article 3 (commencing with Section 14100) of Chapter 3 of this division.'

"Vehicle Code, section 14104 (which is contained in Chapter 3) provides that 'Whenever an informal hearing is granted ... it shall be conducted in a completely informal manner, the only requirement being that the ... licensee shall have the opportunity to make or file a written answer or statement in which he may controvert any point at issue or present any evidence or arguments for the consideration of the department, or the person may present orally to the department any evidence or statement pertinent to the question and submit the question for determination by the department.

"'The department may consider any of the records or reports referred to in Section 14108.'

"Vehicle Code, section 14108, provides that 'At any formal hearing the department shall consider its official records and may receive sworn testimony....'

"Here, the arresting officer's sworn statement, having been duly filed with the Department under Vehicle Code, section 13353, is an official record of the Department within the meaning of Vehicle Code, section 14108. As such, it was entitled to consideration at either an informal or formal hearing before the Department.

"It is settled that the provisions of the Government Code dealing with administrative hearings are not applicable to informal hearings under Vehicle Code, section 14104. (*Hough* v. *McCarthy* (1960) 54 Cal.2d 273, 286-287 ...; *August* v. *Department of Motor Vehicles, supra*, at pp. 59-61.) In the former case, the evidence produced at the informal hearing before the Department included the licensee's driving record. In the case of *Beamon* v. *Department of Motor Vehicles* (1960) 180 Cal. App.2d 200, 209 ..., the Department considered evidence of prior traffic violations which had terminated in disciplinary action against the licensee. The appellate court held that the admission of such evidence was proper and that the licensee's rights were adequately protected by the statutory provision (now contained in Veh. Code, § 14104) authorizing him to present at the hearing evidence controverting the information obtained from the Department's files and to submit the question of fact to the Department for determination.

"We are satisfied that even though the officer's sworn statement did constitute hearsay, it was hearsay specifically made admissible by statute. (See Witkin, Cal. Evidence (2d ed. 1966) p. 588.) Hence, the referee was correct in overruling plaintiff's objection thereto. Plaintiff was obviously entitled to produce evidence controverting the statement at the hearing and, had he chosen to do so, could have called the arresting officer himself. Instead, he relied solely upon his own testimony which furnished additional support for the referee's finding that the officer had probable cause to stop him and in no way controverted the other averments of the officer's sworn statement. (See *August v. Department of Motor Vehicles, supra,* at p. 67.)"

In the recent case of *Burkhart v. Department of Motor Vehicles* (1981) 124 Cal.App.3d 99 [177 Cal.Rptr. 175] (Fifth Dist.), the sworn statement of the subpoenaed arresting officer who failed to appear at an informal hearing was introduced in evidence over objection. The licensee and his wife by their testimony controverted various portions of the officer's statement. The DMV ordered license suspension pursuant to section 13353, the trial court granted writ of mandate on Burkhart's petition and the DMV appealed.

The *Burkhart* court declined to follow the limitations on the admissibility of the arresting officer's written sworn statement imposed by *August* and *Fallis* and adopted the holding of *Fankhauser* that the sworn statement constituted an official record admissible over hearsay objection.

I also decline to follow *August* and *Fallis* and adopt the more recent holdings in *Fankhauser* and *Burkhart* for the reasons stated in the latter two cases.

In the most recent decision to come to my attention the written sworn statement of the arresting officer was held to be admissible over the hearsay objection of the licensee where the arresting officer present at the hearing testified that although the report was prepared while events were fresh in his mind he had then no independent recollection of the incident. (*Fisk v. Department of Motor Vehicles* (1981) 127 Cal.App. 3d 72 [179 Cal.Rptr. 379].) The hearing officer concluded the report was admissible as past recollection recorded and pursuant to section 14108 as an official document. (Evid. Code, § 1280.) The appellate court observed: "Moreover, the officer's lack of independent recollection of the event at the time of the hearing does not render his contempora-

neous written sworn statement untrustworthy. It has been noted that the principal reasons for this well recognized hearsay exception for official records are (1) the presumption that a public official will perform his duty properly and (2) the unlikelihood that he will remember details independently of the record. (Advisory Com. Notes to Proposed Fed. Rules Evid., rule 803(8), 28 U.S.C.; see *Wong Wing Foo* v. *McGrath* (9th Cir. 1952) 196 Fed.2d 120, 123.) Given the volume of official police work, the officer's official written statement will usually be more reliable than his present memory. (McCormick, [Evidence] *supra*, § 315 at p. 736.)" (*Fisk* v. *Department of Motor Vehicles, supra*, 127 Cal.App.3d 72, 79.)

Accordingly, I conclude that an arresting officer's written sworn statement made pursuant to section 13353 is admissible into evidence over a hearsay objection in either a *formal* or *informal* hearing before the DMV.[4]

*The Due Process Issue:*

■ It is generally conceded that suspension of a driver's license for statutorily defined cause implicates a protectible property interest. (*Mackey* v. *Montrym* (1979) 443 U.S. 1, 10 [61 L.Ed.2d 321, 329, 99

---

[4]Some comment appears warranted in respect to the dissenting opinion's hearsay argument which apparently favors *August* and *Fallis* over *Fankhauser* and *Burkhart* in a *formal* hearing situation as distinguished from an *informal* hearing situation.

Sections 14104* and 14107† clearly set forth the distinctions between *informal* and

*Section 14104 provides: "Whenever an informal hearing is granted as provided in this chapter, it shall be conducted in a completely informal manner, the only requirement being that the applicant or licensee shall have the opportunity to make or file a written answer or statement in which he may controvert any point at issue or present any evidence or arguments for the consideration of the department, or the person may present orally to the department any evidence or statement pertinent to the question and submit the question for determination by the department.

"The department may consider any of the records or reports referred to in Section 14108."

†Section 14107 provides: "Whenever the department grants a formal hearing as provided in this chapter, the department shall fix a time and place for hearing as early as may be arranged in the county where the applicant or licensee resides, and shall give 10 days' notice of the hearing to the applicant or licensee, except that the hearing may be set for a different place with the concurrence of the applicant or licensee and the period of notice may be waived.

"Any formal hearing shall be conducted by the director or by a referee or hearing board appointed by him from officers or employees of the department.

"The entire proceedings at any formal hearing may be recorded by a phonographic recorder or otherwise perpetuated by mechanical, electronic, or other means capable of reproduction or transcription."

S.Ct. 2612].) Where a protectible property interest is involved, the individual is entitled to due process protections to safeguard that interest and to insure that it is not unjustly forfeited. (See, e.g., *Board of Regents* v. *Roth* (1972) 408 U.S. 564 [33 L.Ed.2d 548, 92 S.Ct. 2701].)

---

*formal* hearings and are self-explanatory. Section 14108* also clearly and specifically covers evidence that is to be considered at a *formal* hearing which includes the DMV's "official records" which can reasonably be construed to encompass a sworn statement prepared pursuant to section 13353, subdivision (b), filed with the DMV.

The dissenting opinion advances the argument that Officer Henry's sworn statement lodged with the DMV is hearsay because section 14112 provides that a formal hearing is governed by the Administrative Adjudication Act, section 11513, subdivision (c), of the Government Code which in turn provides: "Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but shall not be sufficient in itself to support a finding *unless it would be admissible over objection in civil actions* . . . ." (Italics added.)

Section 14112 pertaining to formal hearing procedure, which is the last section of article 3 entitled "Hearing," is a catch-all provision pertaining to formal hearings bringing into play the provisions of the Government Code relating to administrative hearings for all matters "not covered by the chapter."

Government Code section 11513, subdivision (c), is not controlling not only because section 14108 makes the sworn statement admissible as an "official record" but also because (1) the instant proceedings are civil, not criminal in nature, and (2) all of the criteria of Evidence Code sections 1271 and 1280 rendering a sworn statement made pursuant to section 13353, subdivision (b), an exception to the hearsay rule are reasonably met.

Evidence Code sections 1271 (business record) and 1280 (record by public employee), respectively, render "business records" and "public records" admissible as a hearsay exception provided certain conditions are present. Section 1271 provides for the exception if: "(a) The writing was made in the regular course of a business; [¶] (b) The writing was made at or near the time of the act, condition, or event; [¶] (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and [¶] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness." Section 1280 provides for the exception if: "(a) The writing was made by and within the scope of duty of a public employee; [¶] (b) The writing was made at or near the time of the act, condition, or event; and [¶] (c) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

Clearly the sworn statement of Officer Henry was made in the ordinary course of his official duties and at or near the time of the event. The DMV is the custodian of the statement, not the officer who rendered and turned in the report, and the matter was

---

*Section 14108 provides: "At any formal hearing the department shall consider its official records and may receive sworn testimony and shall be entitled to receive as evidence either at the hearing or subsequent to the hearing and with the consent of the applicant or licensee and use as proof concerning any fact relating to the ability of the applicant or licensee to safely operate a motor vehicle any or all of the following:

"(a) Reports of attending or examining physicians.

"(b) Reports of special investigators appointed by the director or department to investigate and report upon any facts relating to the ability of the person to operate a vehicle safely.

"(c) Properly authenticated reports of hospital records, excerpts from expert testimony received by the department or a hearing board upon similar issues of scientific fact in other cases and the prior decisions of the director upon such issues."

Although a driver's license constitutes a protectible property interest, the state may under certain conditions such as drunk driving, resort to summary suspension proceedings to regulate the use of the driving privilege and to protect the public against its abuse. (*Mackey* v. *Montrym, supra*, 443 U.S. 1, 14-19 [61 L.Ed.2d 321, 332-335].)

---

properly heard before a DMV hearing referee. Thus, as a practical matter the DMV hearing referee himself could logically be construed to be the custodian of the record.

An analogy can be reasonably drawn between the sworn statement in the instant case and the introduction of hospital records which "would be admissible over objection in civil actions." Such hospital records often contain notations by nurses and doctors (who need not necessarily be called to lay a foundation or testify) in respect to their observations as to physical condition including such physical conditions as temperature, blood pressure, and may include verbal statements or complaints of patients elicited by doctors and nurses.

Here, Officer Henry's statement pursuant to section 13353, subdivision (b), contains information of similar character, i.e., observations by Officer Henry that Mackler was "driving E/B Wilshire #1 lane at approx. 75 mph" and when stopped Mackler was observed to have "red eyes—alcoholic breath—impaired balance & coordination." The foregoing remarks are similar to those made by doctors and nurses in hospital records which often include remarks made by patients to nurses and doctors about their condition. Here it was reported that Mackler was argumentative, refused to listen by continually interrupting and would not choose a test.

Nor do I agree with the dissenting opinion that the "motivational factor" destroys the trustworthiness of a sworn statement made by an officer in performance of his official duties pursuant to section 13353, subdivision (b), thus negating the hearsay exception. Such a proposition results in an exception to an exception based on a groundless hypothesis that *all* of California's police officers filing sworn statements pursuant to section 13353, subdivision (b), have "bad motives" and will file inaccurate or false reports. I cannot accept such a hypothesis as a general proposition. Moreover, as a practical matter a licensee who has requested a hearing in *any particular case* is not precluded from defending against the contents of the sworn statement on the grounds that the statement is inaccurate or false based on a preparing officer's "bad motives" by subpoenaing the officer to the hearing and cross-examining the officer in that respect.

The dissenting opinion also disagrees with the *Fisk* court statement that it does not "perceive that the exception to Evidence Code section 664 is intended to make the presumption that official duty is regularly performed inapplicable whenever there is an issue as to the foundation for evidence merely because one of multiple ultimate issues upon which that evidence is relevant is the legality of an arrest." (*Fisk* v. *Department of Motor Vehicles, supra*, 127 Cal.App.3d 72, 78. fn. omitted.)

Evidence Code section 664 which *presumes* that official duty has been regularly performed but further states that the "presumption does not apply on *an issue as to the lawfulness of an arrest* if it is found or otherwise established that the arrest was made without a warrant."

Of importance here is that the hearing is *civil* in nature pertaining to the suspension of a "*privilege*" as distinguished from civil or criminal actions where the possible abridgement of constitutional rights may be involved. Under the "implied consent" statute (§ 13353) cases the licensee driver is usually arrested at the scene without a warrant. It is interesting to note that in those cases where no hearing is requested at all or where an informal hearing is requested official duty is presumed to be regularly performed and the arrest without a warrant does not in and of itself preclude the

■ The reviewing court in *Burkhart* v. *Department of Motor Vehicles, supra,* 124 Cal.App.3d 99, addressed the issue of *"what process is due"* in depth and held that the absence of the arresting officer who prepared the written sworn statement pursuant to section 13353 at the hearing before the DMV referee did not constitute a denial of the driver's state or federal right to due process.

The *Burkhart* court, citing *Mathews* v. *Eldridge* (1976) 424 U.S. 319 [47 L.Ed.2d 18, 96 S.Ct. 893], a case involving social security entitlement, pointed out that "due process" is not a technical conception with a fixed content unrelated to time, place and circumstances but is flexible calling for such procedural protections as the particular situa-

---

suspension of a driver's license based upon the contents of the sworn statement alone.

In the case at bench where a *formal* hearing has been requested and was being conducted, Referee Chatman at the outset stated on the record that: "[T]he scope of this hearing is limited to the following issues which include all necessary subordinate issues: 1) whether the officer had reasonable cause to believe that Mr. Mackler had been driving a motor vehicle upon a highway while under the influence of intoxicating liquor; 2) whether Mr. Mackler was lawfully arrested; 3) whether Mr. Mackler was told that his driving privilege would be suspended for a period of six months if he refused to submit to or failed to complete a chemical test of the alcoholic content of his blood; 4) whether Mr. Mackler refused to submit to or failed to complete a test of his blood, breath or urine to determine the alcoholic content of his blood after being requested to do so by a peace officer...."

Here, Mackler's defense attorney did not raise or attack the issue of the lawfulness of the arrest but merely sought to block the introduction of Officer Henry's sworn statement under the hearsay objection. Here Mackler's defense counsel refused to stipulate to any issue and when his hearsay objection was overruled and the document was entered into evidence over his objection, defense counsel asked Mackler only one question: "Mr. Mackler on 12-3-79 did you refuse to take a blood, urine or breath test for the purpose of determining the alcoholic content in your blood which allegedly was offered to you by Officer Henry?" Mackler answered, "No, I did not refuse," whereupon defense counsel said: "I have nothing further," and refused to allow Mackler to respond to questions posed by Referee Chatman on the ground that his "client has the right against self-incrimination"* and relied upon the procedural hypothesis that the burden was upon the DMV to produce live testimony other than Mackler in order to sustain a license suspension under section 13353, subdivision (b). Accordingly, although Mackler requested a formal hearing he, by his own action or inaction, turned the formal hearing into a shambles and into a hearing which could only be characterized as either an *informal* or a waiver of a *formal* hearing.

---

*"[C]ase law has established that in a civil proceeding for suspension of one's driving privilege under section 13353 the chemical tests do not violate one's right against self-incrimination (*Schmerber* v. *California* (1966) 384 U.S. 757 ...; *People* v. *Sudduth* (1966) 65 Cal.2d 543 ...; *United States* v. *Wade* (1967) 388 U.S. 218 ...; *Finley* v. *Orr, supra,* 262 Cal.App.2d 656; *Walker* v. *Department of Motor Vehicles* (1969) 274 Cal.App.2d 793 ...." (*Anderson* v. *Cozens, supra,* 60 Cal.App.3d 130, 140.)

A fortiori, questions posed by a hearing referee to a licensee, who has requested a hearing, in a search for the truth certainly does not bring into play the licensee's rights against self-incrimination.

tion demands and that the resolution of whether or not any particular administrative procedure is constitutionally sufficient requires an analysis of the governmental and private interests that are affected.[5]

The *Burkhart* court acknowledged that the private interest affected, the license to operate a motor vehicle for a period of six months, is a substantial one. (*Dixon* v. *Love* (1977) 431 U.S. 105 [52 L.Ed.2d 172, 97 S.Ct. 1723]; *Mackey* v. *Montrym, supra,* 443 U.S. 1.) The court then reviewed the character of the interests involved and applied a balancing process to determine what procedural due process demanded under the circumstances. The court noted that the issues on driver license suspension hearings were relatively clear. "The issues before the referee are whether the driver was lawfully arrested for an offense allegedly committed while he was driving, whether the officer had reasonable cause to believe that he had been driving a motor vehicle upon a highway while under the influence of intoxicating liquor, whether the driver was given a choice of three tests—blood, breath or urine, whether there was the advisement that failure to submit to such a chemical test will result in the suspension of his privilege to operate a motor vehicle for six months and whether there was a refusal to so submit. As pointed out in *Mackey* (443 U.S. at p. 15 [61 L.Ed.2d at p. 333, 99 S.Ct. at p. 2619]), these issues do not carry with them a substantial risk of error . . . ." (*Burkhart* v. *Department of Motor Vehicles, supra,* 124 Cal. App.3d at p. 109.)

The *Burkhart* court concluded that a confrontation between the arresting officer and the licensee was not required by federal due process, and declared that the physical presence of the officer at the hearing would not substantially enhance the reliability of the hearing process since, as the court conjectured, officer and licensee were likely merely to engage in a swearing match.

In the *Fisk* case the court found no denial of due process because of curtailment of cross-examination in view of the officer's lack of recol-

[5]In *Mathews* v. *Eldridge, supra,* 424 U.S. 319, the court pointed out that prior decisional law indicated "'[t]hat identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [Citation.]'" (*Id.,* at p. 335 [47 L.Ed.2d at p. 33].)

lection. Fisk did not testify or otherwise attempt to refute the reliability of the officer's sworn statement.

Accordingly, I conclude, as in *Fankhauser* and *Burkhart*, that a licensee's due process rights to cross-examine the police officer who made the written sworn statement pursuant to section 13353 are adequately protected by his obvious entitlement to produce evidence controverting the statement at the hearing and, if he so chooses, he could call the arresting officer himself.[6]

Hard statistics support the wisdom and the practical necessity of California's "implied consent" statute and the *Fankhauser* and *Burkhart* holdings pertaining to *formal* and *informal* section 13353 hearings. The importance and necessity of having a streamlined method for handling section 13353 hearings under the self-contained umbrella of the DMV—timewise, costwise and otherwise—becomes evident when considered in light of the following dramatic statistics:

(1) As of June 30, 1981, per the DMV, there were 19,455,280 vehicles registered in California.

---

[6]Some comment as to the dissenting opinion's due process argument also appears in order. I construe the thrust of the dissenting opinion's due process argument to be that licensee Mackler was denied due process in his formal hearing because the DMV did not subpoena or otherwise insure the presence of Officer Henry at the hearing before Referee Chatman for purposes of cross-examination.

As pointed out in *Burkhart* "due process" is not a technical conception with a fixed content unrelated to time, place and circumstances but is flexible calling for such procedural protections as the particular situation demands. (See fn. 5, *ante*, and the statistics on pp. 61-62.)

Basically, "[t]here are two essentials to due process in a judicial proceeding; (1) the court must have jurisdiction over the parties and the subject matter of the action, and (2) the parties must have reasonable notice and an *opportunity* for hearing. [Citations.] ..." (*Datta v. Staab* (1959) 173 Cal.App.2d 613, 622 [343 P.2d 977], italics added.)

In the instant proceedings the above two essentials to due process are clearly satisfied with the operative word being "opportunity" for a hearing. Licensee Mackler was not denied an "opportunity" for a hearing. He was given adequate notice of the hearing date and Referee Chatman presided over the hearing. When Officer Henry did not appear, Mackler's counsel did not ask for a continuance in order to subpoena Officer Henry for purposes of cross-examination. Nor did Mackler subpoena Santa Monica police matron J. Aran whose name appeared on the sworn statement as a witness. Moreover, Mackler's attorney did not even permit Mackler to respond to questions from Referee Chatman whose function was the ascertainment of the truth. In short, Mackler was clearly afforded an "opportunity" for a hearing but did not avail himself of it.

(2) In the calendar year of 1980 alone there were 74,838 persons injured and 2,684 persons killed in alcohol-involved accidents in California.[7]

(3) In the calendar year of 1980 alone there were 297,756 adult misdemeanor arrests and 5,112 juvenile misdemeanor arrests for drunk driving (§§ 23102, 23102, subd. (d)) and 5,738 adult felony arrests and 236 juvenile felony arrests for drunk driving (§ 23101) in California.[8]

In view of the foregoing statistics there are undoubtedly thousands of California drivers who have their driving privilege suspended each year pursuant to section 13353. To place the burden on the DMV to *automatically* subpoena California Highway Patrol officers, county sheriffs and local police officers who filed a sworn statement under section 13353 in every case where a *formal* hearing is requested would undoubtedly result in a tremendous waste of law enforcement resources and public funds.

However, I do agree with the observation of the court in *Burkhart* that "[T]he licensee has an absolute right to compel [the arresting officers] attendance if he requests a subpena, has it served and pays the statutory fee. (§ 14104.5; Gov. Code, § 68097.2.) In the event the licensee deems the officer's presence critical to his defense, the burden is properly placed on him to insure the officer's attendance...." (*Burkhart* v. *Department of Motor Vehicles, supra,* 124 Cal.App.3d 99, 110.)

The sole difficulty in the case at bench, similar to that faced by the *Burkhart* court, is the failure of arresting Officer Henry to appear pursuant to subpoena in order that Mackler might have the opportunity to confront and cross-examine him. Referee Chatman noted Officer Henry's absence at the beginning of the hearing stating, "[T]he subpoena was sent to the Santa Monica Police Department and was returned on 2-22-80 indicating that Officer Henry was terminated and is no longer with the Santa Monica Police Department. There has been no further contact or attempt to locate the officer...." There was no ex-

7"1980 Annual Report of Fatal and Injury Motor Vehicle Traffic Accidents" by the California Highway Patrol of which I take judicial notice.

8These statistics, of which I take judicial notice, are derived from the official publication entitled "Criminal Justice Profile, 1980," published by the California Department of Justice, Division of Law Enforcement, Criminal Identification and Information Branch, Bureau of Criminal Statistics and Special Services.

ploration of the method of service of the subpoena, the reason for the arresting officer's failure to appear, or whether his presence might be obtained were a continuance requested or granted for that purpose. At oral argument Officer Henry's absence was explained solely on the basis disclosed in the record, e.g., that he was no longer in the employ of the police department. Standing alone, this appears to be inadequate since the officer is still subject to subpoena.

In *Burkhart* the court remanded the case because the matter was twice continued so the arresting officer could attend and Burkhart had no warning that it would be necessary to serve the officer with a subpoena to insure his attendance. The court held that remand was proper in light of the fact that the driver had been led to believe the officer would be present at the administrative hearing and that it was not reasonable for the driver to have anticipated the court's holding that he had the burden to produce the officer's testimony. The court further determined that the officer's testimony could, on remand, be admitted as evidence which could not have been produced at the administrative hearing in the exercise of reasonable diligence. (Code Civ. Proc., § 1094.5, subd. (e).) It concluded that although the original mandamus hearing was a limited trial de novo the superior court on Burkhart's request could hear and consider the officer's testimony or, in its discretion, remand the cause to the DMV for such purpose.

Here, similar to *Burkhart*, petitioner Mackler had requested a formal hearing and apparently had been led to believe that the DMV would arrange for Officer Henry to be present at the hearing. Moreover, the record does not disclose the reason for the arresting officer's failure to appear. (Apparently the DMV merely mailed the subpoena to the Santa Monica Police Department and it was returned with the notation that he was no longer employed by that department.)

Accordingly, by reason of the confusion and in the interest of justice, petitioner Mackler should be accorded the opportunity to confront and cross-examine the arresting officer. Therefore, the matter is remanded to the trial court and that court is directed to conduct a further hearing to give Mackler the opportunity to obtain the officer's testimony on subpoena or to explore fully the reasons for his failure to appear. The trial court, in turn, may at its own discretion remand the cause to the DMV for this purpose.

In view of the remand for further proceedings, the DMV's final contention that Mackler failed to rebut adequately the evidence presented by Officer Henry's written sworn statement need not be addressed.[9]

### DISPOSITION

The judgment is reversed and remanded for further proceedings in accordance with this opinion.[10]

Spencer, P. J., concurred in the judgment.

---

[9]It is noted that the only testimony produced by Mackler was in response to his attorney's question: "[M]r. Mackler, on 12-3-79 did you refuse to take a blood, urine or breath test for the purpose of determining the alcoholic content in your blood which allegedly was offered to you by Officer Henry?" Mackler responded, "No, I did not refuse."

When Referee Chatman attempted to question Mackler as to whether the officer had asked him to submit to a chemical test, Mackler's attorney objected to any further questioning. A referee at such a hearing has the right to inquire of witnesses for the purpose of clarifying their testimony as any trier of fact, judge, arbitrator or any hearing officer is entitled to do.

Having held that Officer Henry's sworn statement was properly admitted into evidence, Mackler's testimony standing alone, under the present state of the record, is ambivalent and insufficient to rebut the sworn statement. Officer Henry's sworn statement states: "Subject was arguementative [*sic*], refused to listen without continually interrupting. I explained the section 13353 cvc several (5-6) times to Mackler. *However he would not choose a test.*" (Italics added.)

Mackler's response to his attorney that "[he] did not refuse" to take a test does not rebut the statement by Officer Henry that "[H]e [Mackler] would not choose a test." It has been held that being too drunk to understand the full import of section 13353 at the time of refusal is no defense (*Fankhauser v. Orr, supra,* 268 Cal.App.2d 418), and that silence in the face of repeated requests to submit to a chemical test constitutes a "failure to submit" within the meaning of section 13353 (*Lampman v. Department of Motor Vehicles* (1972) 28 Cal.App.3d 922 [105 Cal.Rptr. 101]).

[10]Specific comments to the views expressed in the dissenting opinion pertaining to the hearsay and due process issues have been set forth in some detail in footnotes 4 and 6, *ante.*

Generally, with due respect, I perceive the basic thrust of the dissenting opinion to be an effort to force the hearsay and due process issues present in section 13353 formal hearing into the tight shoes of a classic personal injury civil action where money damages are sought by a plaintiff from a defendant or a typical criminal case where a defendant "accused" of a crime faces possible incarceration.

In my opinion the shoe simply does not fit because California's "implied consent" statute (§ 13353) is a unique "special" statute involving the suspension of a state granted driving "privilege." The statutory scheme is specifically designed with definite immediate and long-range purposes in mind. As previously discussed, the immediate purpose of the statute is to avoid possible violence at the scene of a drunk driver's arrest and to obtain the best evidence of intoxication. The long-range purpose is to inhibit drunk driving in order to reduce the mayhem, carnage and slaughter caused by drunk drivers operating instruments of death in California's streets and freeways. The horrendous seriousness of the drunk driving problem facing California citizens (2,684 persons

DALSIMER, J.—I respectfully dissent for several reasons. First, this decision contributes to the diversity of decision which already exists in this area of law. Second, I believe that the lead opinion in this case and the decisions in other cases upon which it relies incorrectly determine that there has been a legislative creation of an exception to the hearsay rule pertaining to the sworn statement of the arresting officer. Third, I feel that the use of the report of the arresting officer is not warranted under the official records exception to the hearsay rule. Finally, and most importantly, I believe that to permit the Department of Motor Vehicles (DMV) to conduct the hearing without producing thereat the arresting officer is a violation of the licensee's due process right of confrontation.

### The Use of Hearsay

Two cases have recognized that in an informal hearing under Vehicle Code section 14104[1] the police officer's sworn statement made pursuant to section 13353 is not sufficient to support a finding against the licensee when contradicted by other evidence. (*August v. Department of Motor Vehicles* (1968) 264 Cal.App.2d 52, 62 [70 Cal.Rptr. 172]; *Fallis v. Dept. of Motor Vehicles* (1968) 264 Cal.App.2d 373, 379 [70 Cal.Rptr. 595].) The lead opinion declines to follow *August* and *Fallis* and instead holds that there is statutory authorization for the admission of hearsay and that such hearsay is a sufficient basis for a finding against the licensee even though contradicted by other evidence. The lead opinion relies upon *Fankhauser v. Orr* (1968) 268 Cal.App.2d 418 [74 Cal.Rptr. 61]. That case involved an *informal* hearing. The court noted that section 14108 provides that at a formal hearing the DMV shall consider its official records and that at an informal hearing the DMV may consider any of the records or reports referred to in section 14108. The court concluded that the arresting officer's sworn statement, having been filed with the DMV under the mandate of section 13353, became an "official record" of the DMV within the meaning of

killed and 74,838 injured in alcohol involved accidents in California in 1980) coupled with the sheer magnitude of the drunk driving arrests (a total of 308,842 felony and misdemeanor drunk driving arrests in California in 1980) and the cost-benefit balancing process inherent in all types of litigation undoubtedly combined to convince the state Legislature that a streamlined method of conducting all section 13353 hearings was essential. The intent of the Legislature in this respect is reasonably construed in the body of this lead opinion and also so construed by the *Fankhauser* court in 1968 and by the more recent cases of *Burkhart* and *Fisk* decided in 1981.

[1]All statutory references hereinafter are to the Vehicle Code unless otherwise designated.

section 14108 and thus should have been considered by the hearing officer. This conclusion was reached by the *Fankhauser* court without further explanation or citation of authority. The court in *Burkhart* v. *Department of Motor Vehicles* (1981) 124 Cal.App.3d 99 [177 Cal. Rptr. 175] also relied on *Fankhauser* even though the hearing requested there was formal (§ 14107), as was the hearing in the case at bar. (The hearing conducted was informal. (*Id.*, at p. 102.))

Although neither *August* nor *Fallis* dealt specifically with the question whether the sworn statement of the arresting officer provided for by section 13353 was hearsay, in both opinions the court held such report to be a sufficient basis for the summary suspension of the license if the licensee does not ask for a hearing, and indicated that at an *informal* hearing such statement is sufficient prima facie evidence of any matter as to which there is no conflicting evidence. The lead opinion in this case and the court in *Burkhart* uncritically accept the *Fankhauser* holding that the interaction of section 14104 with section 13353 creates a statutory exception to the hearsay rule, thus validating the admission of and reliance upon the officer's written statement.

Division 2 of the Vehicle Code provides for the administration of the DMV. Article 3 of chapter 1 of division 2 of the Vehicle Code provides what records shall be maintained by the DMV. (§§ 1800-1819.) Article 3 contains a comprehensive scheme for identifying which records shall be kept, the manner in which they shall be kept, and whether a specific record is public. Nowhere in article 3 is there any mention of the sworn statement provided for in section 13353. The DMV is specifically enjoined to maintain records dealing with the registration of vehicles (§ 1800, subd. (a)), records dealing with licenses to operate motor vehicles (§ 1800, subd. (b)), accident reports (§ 1806), abstracts of court records of convictions under various statutes, including statutes involving use or possession of controlled substances (§§ 1803, 1804, 1806, 1818), abstracts of convictions for traffic offenses (§§ 1806, 1818) and of the disposition of traffic offenses committed by juveniles (§ 1816), and even records of the mileage of motor vehicles upon their sale (§ 1819). A time-honored rule of statutory construction provides that when a listing of subject matter is made, that which is not listed is excluded. An application of this rule would seem to demonstrate that the holding in *Fankhauser* that the statement of the arresting officer required by section 13353 becomes one of the records mentioned in section 14108 is contrary to fact and is unsupported by reason or law.

I do not quarrel with the holding that, when no hearing is requested, the officer's sworn statement may be considered by the DMV and that a suspension may be based thereon; however, once an informal hearing has been requested, a different result ensues. By virtue of section 14108, the DMV may consider the sworn statement as a hearsay document, *not* as an exception to the hearsay rule. It has been held that informal hearings are not covered by the provisions of the Government Code dealing with administrative hearings. (*Hough* v. *McCarthy* (1960) 54 Cal.2d 273, 286-287 [5 Cal.Rptr. 668, 353 P.2d 276]; *August* v. *Department of Motor Vehicles, supra*, 264 Cal.App.2d 52, 59-60.) This is not so in a formal hearing. Section 14112 provides: "All matters in a formal hearing not covered by this chapter shall be governed, as far as applicable, by the provisions of the Government Code relating to administrative hearings, and particularly by Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code." As a formal hearing is governed in part by the Administrative Adjudication Act, section 11513 of the Government Code applies. Subdivision (c) of that section provides in part: "Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions. . . .'

### The Report as an Official Record

The holding in *Burkhart* and the lead opinion in the instant case have blurred the distinctions between an informal hearing and a formal hearing to the point of extinction. At a formal hearing, because of Government Code section 11513, subdivision (c), the statement of the arresting officer is insufficient in itself to support a finding that the licensee was reasonably arrested, or advised of his obligation to take a test, or refused to take any test.

Of course, if the sworn statement of the arresting officer can be admitted as a recognized exception to the hearsay rule, it would be sufficient basis for such a finding. The court in *Fisk* v. *Department of Motor Vehicles* (1981) 127 Cal.App.3d 72, 76-79 [179 Cal.Rptr. 379],[2] held that the officer's statement constituted admissible hearsay as an official record, and the lead opinion herein agrees with that analysis. (Evid.

---

[2] The *Fisk* court refrained from considering the question whether section 14108 creates an independent statutory exception to the hearsay rule and the due process questions thereby posed. (*Id.*, at p. 76, fn. 3.)

Code, § 1280.) I respectfully disagree that the officer's statement was an official record.

Insofar as the *Fisk* court held that the trustworthiness of the method of preparation of the report was supported by the presumption that official duty has been regularly performed, its finding disregarded without citation of authority the express legislative exception in Evidence Code section 664. That section reads: "It is presumed that official duty has been regularly performed. This presumption does not apply on an issue as to the lawfulness of an arrest if it is found or otherwise established that the arrest was made without a warrant." Section 13353, as interpreted by the courts, recognizes as a basic issue the question as to whether the licensee was legally arrested. The lead opinion concedes, by its quotation *ante*, at page 60, from *Burkhart* and *ante*, at page 59, footnote 4, from the statement of the referee, that the lawfulness of the arrest is a central issue in this case. The *Fisk* court states that it does not "perceive that the exception to Evidence Code section 664 is intended to make the presumption that official duty is regularly performed inapplicable whenever there is an issue as to the foundation for evidence merely because one of the multiple ultimate issues upon which that evidence is relevant is the legality of an arrest." (*Fisk* v. *Department of Motor Vehicles, supra,* 127 Cal.App.3d 72, 78, fn. omitted.) I cannot understand this lack of perception. I do not know how the Legislature could be more clear in its statement as to when the presumption of official duty regularly performed does not apply. The lead opinion appears to draw a distinction here based on the fact that the hearing is civil rather than criminal. The exception contained in Evidence Code section 664 is not limited to criminal cases, but extends as well to civil hearings under section 14112. Neither are criminal actions the only situations wherein "the possible abridgement of constitutional rights may be involved." (Lead opn., *ante*, p. 58, fn. 4.) Serious due process problems (*post*, pp. 70-72) exist under the approach of the lead opinion.

The second reason why I do not believe that the sworn statement of the police officer constitutes an official record is, I believe, much more basic. The necessity for the exceptions to the hearsay rule which permit business records and official records to be used goes without question in this modern day and age. Nevertheless, these exceptions to the hearsay rule are not without limitation. This limitation has been recognized for many years. It was mentioned as early as 1835 in the English case of *Poole* v. *Dicas* (1835) 131 Eng.Rep. 1267, 1269, and as early as 1854 in *Lord* v. *Moore* (1854) 37 Me. 208, 220, and is said by Wigmore to

require that there must be no motive of the maker of the record to misrepresent. (5 Wigmore, Evidence (Chadbourn rev. ed. 1974) § 1527, p. 448.) The leading case in this regard is *Palmer* v. *Hoffman* (1943) 318 U.S. 109 [87 L.Ed. 645, 63 S.Ct. 477, 144 A.L.R. 719]. In that case, the court excluded a written accident report made by a train engineer on the grounds that "[u]nlike payrolls, accounts receivable, accounts payable, bills of lading and the like, these reports are calculated for use essentially in the court, not in the business. Their primary utility is in litigating, not in railroading." (*Id.*, at p. 114 [87 L.Ed. at p. 650].)

The same principle was recognized by the Congress of the United States when dealing with rule 803(8)(B) of the Federal Rules of Evidence. The Judiciary Committee of the House of Representatives had approved the provision as it was reported by the Supreme Court (H. R. Rep. No. 93-650, 2d Sess. (1974)), but, on the floor of the house after debate, rule 803(8)(B) was amended to provide the matter which is enclosed in brackets in the following excerpt: "Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... (B) matters observed pursuant to duty imposed by law [as to which matters there was a duty to report, *excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel ....*]" (120 Cong. Rec. 2387-2389 (1974), italics supplied.) Of course, we are not dealing with the right of a defendant in a criminal trial. But, as was pointed out in *August* v. *Department of Motor Vehicles, supra*, 264 Cal.App.2d 52, "The provisions of the Sixth Amendment to the federal Constitution in terms protect only persons charged with a crime and have been held to apply only to criminal proceedings. The presence in the amendment of that provision has, however, colored judicial thinking as to noncriminal proceedings. [Citation.]" (*Id.*, at p. 60.) It has long been the rule in California that reports such as a police officer's sworn statement are not admissible under the Official Records Act. (*Hoel* v. *City of Los Angeles* (1955) 136 Cal.App.2d 295, 309 [288 P.2d 989].)

In my view the proper interpretation of section 1280 of the Evidence Code must include a consideration of the motivational factor. Under Evidence Code section 1280, subdivision (c), the sources of information must be taken into consideration to determine the trustworthiness of the writing. As was recognized in *Palmer* v. *Hoffman, supra*, 318 U.S. 109, documents prepared for the purpose of litigation lack the presumption

of trustworthiness that may apply to documents prepared in the ordinary course of business. Thus, in the case of the verified statement prepared by a police officer after arrest, it would seem that there might be a motivation on the part of the officer to justify his action. The verified statement is by its very nature a part of the litigation process. It triggers the action of the DMV in enforcing section 13353. It is no more a regular record made in the course of business than was the report of the engineer in *Palmer* v. *Hoffman, supra,* 318 U.S. 109. I hasten to add that I have no inherent distrust of police officers or lack of respect for their obligations. Nevertheless, the fact cannot be eschewed that the officer has taken a position; he has made an arrest. He has developed an interest in the outcome thereof. Further, I do not believe that the appellate courts should allow their zeal for the enforcement of a worthwhile statute to erode the protection of the rules of evidence which have evolved through the history of Anglo-American jurisprudence.

## DUE PROCESS

I respectfully believe that the *Burkhart* court was in error and that the *August* court was correct in their respective evaluations of the procedural due process aspects of the problem at hand. The court in *Greene* v. *McElroy* (1959) 360 U.S. 474 [3 L.Ed.2d 1377, 79 S.Ct. 1400] stated: "Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy. We have formalized these protections in the requirements of confrontation and cross-examination. They have ancient roots. They find expression in the Sixth Amendment which provides that in all criminal cases the accused shall enjoy the right 'to be confronted with the witnesses against him.' This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases, [citations], but also in all types of cases where administrative and regulatory actions were under scrutiny. [Citations.]" (*Greene* v. *McElroy, supra,* 360 U.S. 474, 496-497 [3 L.Ed.2d 1377, 1390-1391], fn. omitted.)

In making its case that due process did not require that the DMV produce the officer at the hearing, the *Burkhart* court states: "The physical presence of the officer at the hearing would not substantially enhance the reliability of the hearing process. The officer and the licensee would engage in a swearing match and cross-examination of the officer would seldom reveal any weaknesses in his testimony, simply because the issues are neither complex nor subtle." (*Burkhart* v. *Department of Motor Vehicles, supra*, 124 Cal.App.3d 99, 110.) I would respectfully suggest that what the *Burkhart* court characterizes as "a swearing match" is known in Anglo-American jurisprudence as the adversary system. I, for one, am not ready to abandon that system for a system of inquisition. As the Supreme Court has said, "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses. [Citations.]" (*Goldberg* v. *Kelly* (1970) 397 U.S. 254, 269 [25 L.Ed.2d 287, 300, 90 S.Ct. 1011].) Again, I differ with the *Burkhart* court in its interpretation of the quoted statement from *Steen* v. *Board of Civil Service Commrs.* (1945) 26 Cal.2d 716, 726-727 [160 P.2d 816]: "The general rule is that in the absence of a special statute an administrative agency cannot over objection make findings of fact supported solely by hearsay evidence. [Citations.]" To reiterate, there is no special statute involved here. The holding in *Steen* governs.

All of the cases which have dealt with section 13353 agree that depriving the licensee of his license is a severe sanction and one which has a severe impact upon an important aspect of life in contemporary California society. In *Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70 [177 Cal.Rptr. 566, 634 P.2d 917], the court, in reaffirming the constitutionality of section 13353, cited *August* approvingly as being a case which held that the statute satisfied procedural due process requirements. (*Hernandez* v. *Department of Motor Vehicles, supra*, 30 Cal.3d 70, 73, fn. 5.) It is my opinion that the *August* decision is correct and that it should be followed in this case.

I further respectfully disagree with the lead opinion's finding that a licensee's "due process rights to cross-examine the police officer who made the written sworn statement" (lead opn., *ante*, at p. 61) could be exercised by the licensee calling the officer as a witness. The lead opinion cites no authority for the proposition that, in affording the due process rights of confrontation and cross-examination, it is up to the accused to seek out and bring the accuser to court. I suspect this is so because there is no such authority. The lead opinion permits the hearing

officer to receive the *sine qua non* of the case against the licensee via the hearsay statement of the officer and then permits the accused to summon as his own witness the author of the statement in the hope of impeaching not the officer, but the hearsay statement. If, indeed, the licensee has, as I believe he does, a right to be confronted by and to cross-examine his accuser, then the correlative duty on the part of the DMV is to produce the accuser at the hearing. If the law does not require the DMV to produce at the hearing the police officer who instigated the complaint against the licensee, then in my opinion the hearing becomes a farce. If the police officer is unavailable, what becomes of the licensee's due process rights? I do not contend, as the lead opinion suggests, that the DMV should automatically subpoena the arresting officer in every case where a formal hearing is requested, but only where the licensee requests that the officer be produced.

If, as the court states in *Burkhart*, a formal hearing may result in the suspension of the license when the only evidence before the hearing officer is a sworn hearsay statement of an absent police officer which is contradicted by the live sworn testimony of the licensee and a witness, then, indeed, the constitutional requirement of providing a hearing has become nothing more than sham and pretense. The lead opinion states *ante*, at pages 64-65, footnote 10, that the "horrendous seriousness of the drunk driving problem" convinced the Legislature that a "streamlined method of conducting" section 13353 hearings was essential. As indicated, I do not believe that the Legislature has provided a streamlined method as the lead opinion asserts. In any case, I respectfully suggest that the end does not justify the means, particularly not where the means is a retreat from constitutional principles.

The judgment should be affirmed.

A petition for a rehearing was denied April 23, 1982. Dalsimer, J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied July 14, 1982.